Cynthia Rae THOMAS, Appellant,

v.

Lonnie Samuel THOMAS, Appellee.

No. S–3336.

Supreme Court of Alaska.

Aug. 9, 1991.

Kenneth P. Jacobus, Anchorage, for appellant.

William T. Ford, Anchorage, for appellee.

Before RABINOWITZ, C.J., and MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This appeal presents two issues pertaining to the valuation of certain items of marital property. Cynthia Thomas challenges the superior court's valuation of her non-vested retirement benefits at the amount of her contributions. She also contests the trial court's failure to account for appreciation in its valuation of a purse seine limited entry permit. On the record before us, we reverse and remand this case to the superior court for new findings of

fact or for clarification of its previous findings of fact and conclusions of law so as to be consistent with this opinion.

## I. Facts and Proceedings

Cynthia and Lonnie Thomas were married on March 25, 1978 in Everett, Washington. The parties separated in December 1987 and Cynthia filed for divorce on February 1, 1988. Trial was held from February 14–16, 1989. There were no children to the marriage and the trial centered on the division of the parties' real and personal property.

The court divided the $223,479 marital estate equally, awarding $111,740 to Cynthia and $111,739 to Lonnie. Lonnie was ordered to pay Cynthia $50,590 to buy her equity in the marital assets he received. The payments were to be made through annual installments of $15,000 plus interest, to be paid in full by March 1992.

Cynthia filed a Motion for Reconsideration of the value of certain items of marital property. Lonnie opposed her motion, and it was denied on February 24, 1989. She then appealed the trial court's valuation of her non-vested pension plan at $25,542, the amount it determined to be her contributions during the marriage, and of a limited entry purse seine permit which was assigned to Lonnie with an offset to Cynthia of $8,750. Both parties subsequently attempted to expand the scope of the appeal, Cynthia by moving to amend her statement of points on appeal and Lonnie by filing a belated cross-appeal. Their motions were denied by order on October 8, 1990. The scope of this appeal is limited to the two issues set forth in Cynthia's original statement of points on appeal.

## II. Property Valuation

### A. Standard of Review

■ The issues presented in this case require review of the value assigned by the trial court to particular marital assets. A trial court's valuation of marital property is reviewed only for clear error. *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988). A decision is clearly erroneous where this court is left with a definite and firm conviction on the entire record that a mistake has been made. *Martens v. Metzgar*, 591 P.2d 541, 544 (Alaska 1979).

### B. Non-vested Pension

At the time of trial, Cynthia had nine years in an IBEW pension fund and needed one additional year for it to vest. Cynthia testified that she had six more years in which she could perform the final year of service, but that she had been attending the University of Alaska for the past three years and, although she had been applying for jobs throughout that time, she "[hadn't] had any bites." Although she hoped to be able to finish the final year required to vest her pension, because of the tight job market in her field, she thought it "highly improbable" that she would be able to do so.

The trial court valued Cynthia's retirement plan at $25,542, the amount of her contributions from January 1, 1978 to December 31, 1985. Cynthia argues that the "value of contributions" approach used by the trial court is inappropriate and results in an excessive valuation. She asserts that nonvested pensions should be valued according to the "reserved jurisdiction" approach. *See Laing v. Laing*, 741 P.2d 649 (Alaska 1987).[1]

■ In *Laing* we stated our preference for reserving jurisdiction as an alternative to valuing non-vested pensions at the time of trial. Under this approach, a non-vested pension is not considered when the trial court makes its initial property division at the time of the divorce. Rather, the court reserves jurisdiction and if the pension vests, the non-employee spouse may seek an order dividing the pension, which will be done in the same manner as it

---

1. Cynthia alternatively argues that contributions from January 1 to March 25, 1978 (the date the parties were married) should be excluded. However, $25,542 is the figure Cynthia's attorney gave the court when asked for the amount of marital contributions. Furthermore, any injustice stemming from inclusion of premarital contributions is balanced by the court's failure to include marital contributions for the year 1986.

would have been if the pension was vested at the time of the divorce.[2]  *Id.* at 658. However, our discussion in *Laing* does not discuss the procedure to follow when it is apparent at the time of trial that a nonvested pension will not vest.  In some such cases, although the pension benefits are forfeited, the employee's contributions are returned.  Where the employee's contributions to the plan are refunded, the plan has essentially functioned as a savings account; contributions made during the course of the marriage would logically be marital property.  If it is apparent at the time of trial that vesting is extremely unlikely then it would be inappropriate for the trial court to needlessly delay the final resolution of a divorcing couple's financial affairs.  *See Laing,* 741 P.2d at 657.

█  The trial court's valuation implies that it found, based on Cynthia's testimony that she cannot find employment in her field, that Cynthia's pension will not vest and that it assumed her contributions will be refunded at some point.  However, the trial court's findings of fact and conclusions of law do not state any finding that the pension will not vest.  Nor is there any basis in the record upon which to determine whether Cynthia's contributions will be refunded to her.  Unless it is a finding of the court that the pension will not vest, the court's failure to follow *Laing* was clearly erroneous.  In addition, even if the court did find that Cynthia's pension will not vest, in the absence of an evidentiary basis in the record to show that her contributions will be refunded, it was clearly erroneous to include the value of Cynthia's contributions in her portion of the property distribution.

Therefore, we reverse the court's valuation of Cynthia's pension and remand to the trial court to clarify its previous findings or to make new findings of fact for the following proceedings.  If the court finds that

the pension may vest in the future, it is directed to retain jurisdiction and follow the valuation procedure set forth in *Laing.* However, if it finds that the pension will not vest, then an evidentiary hearing must be held to determine whether Cynthia's contributions will be refunded.  If it is established that Cynthia's contributions will be refunded, the trial court may then properly value the pension at $25,652, the amount determined to be Cynthia's contributions during the course of the marriage. However, if it is shown that her contributions will not be refunded, the proper valuation of the pension is zero, the property distribution must be reassessed accordingly, and an amended judgment must be entered.

### C.  Limited Entry Purse Seine Permit

In March 1978, the day after the parties were married, they purchased a boat and an Alaska Power Troll Permit for approximately $18,000.  According to Cynthia's expert, Richard Focht, Jr., research analyst for the Alaska Commercial Fisheries Entry Commission, the estimated value of a troll permit during the first quarter of 1978 was $12,341.

In mid-1978, Lonnie traded the troll permit to his brother, Edward Thomas, in exchange for Edward's limited entry purse seine permit.  Focht estimated that the value of the purse seine permit in December 1987, when the parties separated, was approximately $42,750.  At the time of trial, the purse seine permit had a value of approximately $75,667 according to Focht. Lonnie does not dispute Focht's valuations.

Throughout the proceedings Lonnie maintained that the permit was his separate property.  The trial court awarded the purse seine permit to Lonnie;  however, it refused to treat the permit as a separate

---

**2.**  Once a pension is vested, the trial court may determine its present value and award the nonemployee spouse the appropriate percentage of the fraction of the present value which represents the marital contribution to the accrued pension benefits.  *Laing,* 741 P.2d at 657–58. Alternatively, to avoid requiring the employee

spouse to retire, it may retain jurisdiction and allow the employee spouse to periodically pay the non-employee spouse sums equal to the pension benefits which would otherwise be received.  *Morlan v. Morlan,* 720 P.2d 497, 498 (Alaska 1986).

asset.[3] Accordingly, it concluded that Cynthia was entitled to an offsetting award equal to the value of her half of the permit. The valuation it assigned to her was $8,750.[4]

■ Cynthia now argues that the trial court's failure to account for appreciation in its valuation of the permit was clearly erroneous. We agree. We have stated that equity in a marital asset which accumulates during a marriage is marital property. *Burgess v. Burgess,* 710 P.2d 417, 420–21 (Alaska 1985). We have also ruled that in valuing a marital asset, "the court should look to the asset's fair market value." [5] *Nelson v. Jones,* 781 P.2d 964, 970 (Alaska 1989) (citing *Richmond v. Richmond,* 779 P.2d 1211, 1214–15 (Alaska 1989)).

Lonnie does not dispute Cynthia's claim that the trial court erroneously failed to include appreciation in the valuation of the purse seine permit. However, he proposes that the purse seine permit should be valued at $42,750, its value as of December 1987, when the parties separated rather than $75,667, its value at the time of the trial.

■ In our recent decision, *Ogard v. Ogard,* 808 P.2d 815, 819 (Alaska 1991), we expressed a clear preference that property should be valued for division purposes at the date of trial rather than the date of separation. Despite this preference in favor of valuation at the time of trial, there still may be limited special circumstances where the trial court has discretion to select an earlier date, such as when that date is agreed to by the parties. The separation date may be used when special circumstances of the case demonstrate that a truly fair and appropriate property evaluation and division of assets cannot otherwise be achieved. *See Moffitt v. Moffitt,* 813 P.2d 674, 678 (Alaska 1991); *Dixon v. Dixon,* 747 P.2d 1169, 1174 (Alaska 1987).

■ Since the trial court's findings of fact and conclusions of law indicate that the valuations it assigned were intended to reflect the value of marital property at the date of separation rather than the date of trial, there is an implication that the court found that special circumstances justified valuation at the date of separation. However, the court did not state the reasons for its selection of the separation date for valuation or identify specific circumstances which require valuation prior to the date of trial. Therefore, we remand to the trial court to state the basis, if any, for its valuation of the parties' property at the date of separation. In addition, the court should identify any basis for valuing the permit on a date other than the date of valuation for other property.

If the court can identify a strong basis for valuing the permit at the date of separation, it should value the permit at $42,750 and state its reasons for selecting the separation date for the, valuation. However, if the court cannot identify a sufficiently compelling reason to override the *Ogard* presumption in favor of the trial date, the court should value the permit at $75,667. Finally, the court must amend its findings of fact and conclusions of law in accordance with the considerations set forth in

---

3. Lonnie again opposes Cynthia's proposed valuation on the ground that the permit was his separate property. *Brooks v. Brooks,* 733 P.2d 1044, 1054 (Alaska 1987). However, Lonnie did not appeal the trial court's treatment of the permit as marital property. Therefore, this issue is not properly before us. Alaska R.App.P. 204(a)(2).

4. The court did not explain this valuation. The parties agree that this figure most likely represents half of the estimated purchase price for the troll permit for which the purse seine permit was traded ($17,500/2 = $8,750).

5. Lonnie argues that the sales value of the permit is irrelevant because the permit could not be sold without depriving him of his livelihood. We reject this argument. The permit is analogous to a business with respect to its income-producing potential. When a divorcing couple's marital property includes a business which is "important, necessary and instrumental in [one spouse's] continued employment," the trial court may award that property to the operating spouse. *Lewis v. Lewis,* 785 P.2d 550, 557 (Alaska 1990). However, since the business is marital property, the other spouse must obviously be compensated for his or her share of the value of the business.

this opinion, and enter an amended judgment.

REVERSED and REMANDED.