**Judith A. ROOT, Appellant,**

v.

**Leslie R. ROOT, Appellee.**

**No. S–4901.**

Supreme Court of Alaska.

April 30, 1993.

Kenneth P. Jacobus, P.C., Anchorage, for appellant.

Leslie R. Root, pro se.

Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

**OPINION**

MOORE, Chief Justice.

In this property division appeal, Judith Root contends that the trial court's decision to award Leslie Root his nonvested military retirement pension is contrary to this court's holding in *Laing v. Laing*, 741 P.2d 649 (Alaska 1987). We agree.

## I. *FACTS AND PROCEEDINGS*

After a twenty-year marriage, Judith Root filed for divorce in January 1991.

The only contested issue at trial concerned the equitable division of the marital estate.

At the time of divorce, the parties' only significant marital assets were the Anchorage family home, Judith's thrift account, Judith's vested PERS pension and Leslie's nonvested military retirement benefits. The estimated equity in the family home ranged from $26,098 to $36,098.[1] Judith's thrift savings account had a balance of approximately $4,187.54. The value of Judith's vested PERS pension plan was not established at trial. Similarly, Leslie's nonvested military retirement benefits were not valued at trial.[2]

The trial court entered its findings of facts and conclusions of law in October 1991. It awarded the family home to Judith along with the associated debt. It also awarded Judith all of the funds in her thrift account and in her unvalued PERS pension plan, as well as various items of personal property worth approximately $23,865. The court awarded Leslie his unvalued nonvested military retirement benefits and various items of personal property worth approximately $22,505. This appeal followed.

## II. *DISCUSSION*

### A. *Standard of Review*

■■■■ The division of property in a divorce action involves a three-step process— the trial court must (1) determine what property is available for distribution, (2) value the property, and (3) determine the most equitable allocation. *Carlson v. Carlson*, 722 P.2d 222, 223–24 (Alaska 1986). The identification of the property available for distribution is reviewed under the "abuse of discretion standard, although it may involve legal determinations to

which this court applies its independent judgment." *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988). The valuation of the marital property is a factual determination, and will be reversed only if clearly erroneous. *Id.* We will reverse an allocation decision only for abuse of discretion and only if the allocation is clearly unjust. *Id.*

### B. *Equitable Distribution of Nonvested Pension Benefits*

■■ Relying on *Laing v. Laing*, 741 P.2d 649 (Alaska 1987), Judith contends that the trial court erred in distributing Leslie's nonvested military pension to Leslie. In *Laing*, we held that nonvested retirement benefits are marital assets subject to division by the trial court.[3] *Id.* at 656. We observed that:

> [T]he contingent nature of a nonvested pension presents simply a valuation problem, not bearing on the non-employee spouse's entitlement to a just share of the marital assets. Pension benefits are generally viewed as deferred compensation for services rendered and the employee spouse's right thereto is a contractual right.

*Id.* (citations omitted). We then adopted the following approach for dividing nonvested pension rights:

> First, because the nonvested pension may, by definition, be forfeited in its entirety, it should not be considered when the trial court makes the initial property division at the time of the divorce. If and when the employee spouse's pension rights vest and if the parties are unable to reach an agreement on their own, the non-employee spouse may at any time thereafter seek an order

---

1. The house, valued between $145,000 and $135,000, has an outstanding mortgage of $108,902. However it cannot be sold until the current leasehold expires in June 1993.

2. Leslie's military retirement benefits do not vest until April 1993 when he will complete 20 years of service with the army. The amount of the benefit will be one half of Leslie's base pay at the time of retirement. The parties do not dispute that approximately 68% of these retirement benefits are part of the marital estate.

3. Leslie cites outdated case law to argue that military retirement benefits are not available for equitable division. Following the 1982 enactment of the Uniformed Services Former Spouse's Protection Act, we held that military retirement benefits may be equitably divided under state law. *Chase v. Chase*, 662 P.2d 944 (Alaska 1983).

dividing the pension. This is to be done in the same manner as if the pension had been vested at the time of the divorce.... Once the pension has vested, the trial court can determine whether the present value or the retained jurisdiction approach is appropriate in a given case and adapt that approach to the specific circumstances presented.

*Id.* at 658; *see also Thomas v. Thomas,* 815 P.2d 374, 375–76 (Alaska 1991) (holding that trial court should follow the *Laing* procedure unless it specifically finds that the pension will not vest and that the employee's contributions will be refunded—in which case the court should value and divide the marital portion of the employee's contributions upon divorce).

Under *Laing,* the trial court clearly erred in awarding Leslie his nonvested retirement benefits at the time of divorce. The trial court apparently felt that Judith would be best served by an award of all of the equity in the family home in lieu of a share of Leslie's retirement benefits because this division would provide her with a lump sum with which to pursue her educational goals. The court also believed that this distribution scheme would best achieve our policy of disentangling the financial affairs of those seeking divorce.

However, Judith will only receive this lump sum after the current leasehold expires in June 1993 and the house is sold. Leslie's retirement benefits vest in April 1993. Thus the trial court could have achieved the same result by retaining jurisdiction over Leslie's nonvested pension and equitably dividing the remaining marital assets. Once Leslie's pension vested, the court could then have determined the present value of the vested pension and awarded Judith a lump sum (possibly out of Leslie's share of the house equity when sold) as her share of the pension. *See Thomas,* 815 P.2d at 376 n. 2; *Laing,* 741 P.2d at 657–58 (once vesting occurs, the marital portion of the pension may, in appropriate cases, be made payable in a lump sum or in installments without regard to when the pension benefits are actually received).

## C. Necessity for Adequate Evidence at Trial

The trial court's error in distributing Leslie's nonvested retirement benefits is aggravated by the fact that Leslie failed to present evidence indicating the present value of these benefits. *See Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983) (trial court must determine the value of the marital assets available for distribution). Similarly, Judith failed to present any evidence of the value of her vested PERS pension. We have previously held that it is the duty of the parties, not the court, to ensure that all necessary evidence is before the court in divorce proceedings and that a party who fails to present sufficient evidence may not later challenge the adequacy of the evidence on appeal. *Hartland v. Hartland,* 777 P.2d 636, 640 (Alaska 1989). However, in cases such as this one, where a party identifies a significant marital asset but presents no evidence as to its value, the best practice is for the trial court to direct the parties, or the delinquent party, or the party having the best access to the proof, to fill the evidentiary void.

REVERSED and REMANDED for proceedings consistent with this opinion.