Robert Bruce **WAINWRIGHT**, Appellant
and Cross–Appellee,

v.

Karen Yvette **WAINWRIGHT**, Appellee
and Cross–Appellant.

Nos. S–5560, S–5570.

Supreme Court of Alaska.

Jan. 13, 1995.

William T. Ford, Anchorage, for appellant
and cross-appellee.

Sharon L. Gleason, R. Scott Taylor, Rice,
Volland and Gleason, P.C., Anchorage, for
appellee and cross-appellant.

Before MOORE, C.J., RABINOWITZ,
MATTHEWS and COMPTON, JJ., and
BRYNER, J. Pro Tem.*

*OPINION*

MATTHEWS, Justice.

I. *FACTS AND PROCEEDINGS*

     After a marriage of some twenty-
two years, Robert and Karen Wainwright
were granted a divorce on November 4, 1992,
following a contested trial in the superior

* Sitting by assignment made pursuant to article     IV, section 16 of the Alaska Constitution.

court. Each appeals from various aspects of the court's order dividing their property. The main dispute involves the court's decision to retain jurisdiction until December of 1999 when Robert's pension is scheduled to vest.[1]

Robert is a physician employed by the United States Public Health Service. At the time of the trial he was earning approximately $95,000 annually and was fifty-two years old. Karen is a nurse employed at the Alaska Native Medical Center. At the time of the trial she was earning approximately $54,000 per year and was fifty-one years old.

The court valued the marital estate at approximately $377,000 (including $10,488 for the family home) and ordered a property division under which Karen is to receive 55%, and Robert 45%, of the net value of the estate. Approximately 90% of the parties' net assets are highly liquid, consisting of mutual funds, bonds, money market accounts and cash. Not included in the total asset calculation are the parties' nonvested federal pensions. Robert's pension vests in December 1999 and Karen's pension vested in December 1992, two months after trial.

Robert asked the court to treat his pension as though it were vested, to value it and determine its marital component based on that assumption, and to make a compensatory award of other property to Karen representing her share of the pension. The trial court refused to treat Robert's pension as vested, ruling that "under the doctrine of *Laing v. Laing*, 741 P.2d 649 (Alaska 1987), valuation of said retirement is too speculative." Instead, the court entered an order setting out a procedure to be followed in 1999 if and when vesting occurs.

The order provides that Karen is to receive 50% of the marital portion of Robert's pension.[2] It specifies that thirty days prior to vesting Robert must elect whether to pay Karen her share in a lump sum or an "allotment."[3] The marital portion of the pension will be determined by a so-called coverture fraction of $75/240$. Seventy-five is the number of months of Robert's qualified employment during the marriage. Two hundred and forty will be the total number of months of qualified employment at the time of vesting. Robert's pay for the purpose of calculating the marital property portion of the pension is not to be his actual pay at vesting, but his salary at separation, "plus all annual percentage increases for cost of living."[4] The order requires use of IRS life expectancy tables and states that the "discount rate shall be the percentage rate that the Internal Revenue Service uses in November, 1999, for its

1. We find no clear error concerning the other issues and determine them summarily. *See, e.g., Brosnan v. Brosnan*, 817 P.2d 478, 480 (Alaska 1991) (trial court factual determination will be overturned only if clearly erroneous). Specifically, the court did not abuse its discretion in concluding that the Colorado property was marital rather than separate property. Robert admitted at trial that he used marital funds to pay property taxes on the property, and expended some $2600 of marital funds in order to foreclose and thus reacquire the property. *See Zimin v. Zimin*, 837 P.2d 118, 122 n. 6 (Alaska 1992) (separate property may be transmuted when marital funds are used, in part, to acquire it); *Miles v. Miles*, 816 P.2d 129, 132–33 (Alaska 1991) (*de minimis* payments on separate property do not transmute it to marital property). The court did not err in distributing $7839 of art work to Karen and $2944 to Robert. Robert, of course, is under a duty to transfer art work in his possession which has been allotted by the court to Karen. Karen asks for no relief concerning her claim that Robert should not have been allowed to peremptorily challenge the settlement conference judge and we thus make no ruling concerning this claim.

The trial court's award of $2500 in fees to Karen—approximately 12% of Karen's total litigation expenses—was not an abuse of discretion since the property division was weighted in her favor and she is employed at a well-paying job. *See, e.g., Mann v. Mann*, 778 P.2d 590, 592 (Alaska 1989) (parties in comparable economic situations should bear own costs).

2. Robert is also to receive a share of the marital portion of Karen's pension.

3. This is a reference to installment payments made at the direction of employees of the Public Health Service which are deducted by the Public Health Service from employees' salaries or pension payments.

4. Robert's annual pension payments will actually be calculated by multiplying his base pay times 2.5 for every year of qualified employment with a maximum of 30 years. Thus if Robert retires after 20 years he will receive 50% of his base pay, if he retires after 30 or more years he will receive 75% of his base pay. 42 U.S.C. § 212 (1991).

annuity valuation calculations." [5]

## II. DISCUSSION

### A. Dividing Robert's Nonvested Pension

■ As noted, the main dispute in this case is whether the trial court should have retained jurisdiction until Robert's pension vests or divided Robert's nonvested pension for immediate allocation between the parties. In *Laing v. Laing*, 741 P.2d 649, 658 (Alaska 1987), we held that a nonvested pension should not be divided as part of a divorce property division. Rather, the trial court should retain jurisdiction until the pension vests and, at that point, equitably divide that portion of the pension which is marital in character. *Id.* at 657–58. We acknowledged in *Laing* that this result conflicts with the goal that a divorce property division should provide a prompt and final resolution of a couple's financial affairs, but found it necessary to "accept a degree of continued financial entanglement" in order to avoid unfairness. *Id.*

Robert argues that the jurisdiction-retaining device adopted in *Laing* was intended to benefit the spouse who is in the process of earning the pension (the employee spouse), and to protect that spouse from the risk that the pension may never vest. He contends that where, as here, the employee spouse is willing to assume the risk of nonvesting, the general rule that financial matters should be settled at the conclusion of a divorce trial should control.

In response, Karen first argues that the vesting contingency is not waivable by the employee spouse, citing *Root v. Root*, 851 P.2d 67 (Alaska 1993). Further, she argues that considerable uncertainty will be eliminated by deferring valuation until the time of vesting.

In *Root*, the husband's military pension was to vest two years after the divorce trial. *Id.* at 68 n. 2. The trial court awarded the husband all of his nonvested pension, but did not value it. *Id.* at 68. The trial court purported to offset this award by granting the wife the estimated value of the family home and a savings account. *Id.* On appeal by the wife, we stated that "[u]nder *Laing*, the trial court clearly erred in awarding [the husband] his nonvested retirement benefits at the time of divorce." *Root*, 851 P.2d at 69. Noting that the husband's retirement benefits would vest before the family home could be sold, we stated that "once [the husband's] pension vested, the court could then have determined the present value of the vested pension and awarded [the wife] a lump sum (possibly out of [the husband's] share of the house equity when sold) as her share of the pension." *Id.* We went on to observe that the husband had failed to present evidence indicating the current value of his pension benefits and that the wife had also failed to present evidence as to the current value of her vested pension. *Id.*

*Root* does not stand for the proposition that an employee spouse who owns a nonvested pension may not waive the fact that it is nonvested for purposes of calculating a division of the marital estate. It does not appear from the *Root* opinion that the husband offered in the trial court to waive the risk of nonvesting. Despite the reference to *Laing*, the real error in *Root* was the trial court's failure to value the husband's pension. Without such a valuation, there was no way to determine whether the property division was equitable. This inability would exist regardless of whether the property division was deferred until the husband's pension vested or was accomplished at the time of the trial.

Robert's argument that the deferral-until-vesting remedy of *Laing* was imposed so that the employee spouse would not bear the risk of nonvesting is correct. We stated in *Laing* that "[s]ince the nonemployee spouse receives his or her share in a lump sum at the time of the divorce, ... [attaching a present value to a nonvested pension] unfairly places all risk of possible forfeiture on the employee spouse." 741 P.2d at 657. Since the *Laing*

---

5. Under current law this rate is 120% of the federal midterm rate (I.R.C. § 7520(a)(2)); the federal midterm rate is the average market yield on United States securities with remaining periods to maturity of three to nine years. I.R.C. § 1274(d). Currently the federal midterm rate is 6.83% for an annuity payable monthly.

method was imposed for the benefit of the employee spouse, it follows that the employee spouse may waive the method and choose to accept "all risk of possible forfeiture." *Id.*[6] When the employee spouse accepts the total risk of forfeiture, prompt and final settlement of the marital estate, the policy sacrificed in *Laing,* can be achieved.[7]

Karen's second argument, that retaining jurisdiction until 1999 would eliminate uncertainty and the necessity for "a battle of valuation experts," is largely incorrect. The major dispute between Robert's expert, Sherwin, and Karen's expert, Schilling, related to the applicable discount rate.[8] The dispute between Schilling and Sherwin as to what discount rate to employ was present just as strongly in their calculations assuming a 1999 valuation as in their time of trial calculations.[9]

We conclude, therefore, that the court erred in refusing to value Robert's pension as though it had vested at the time of trial. Robert, in a knowing waiver, decided to accept the entire risk of his pension not vesting. Treating his pension as vested would achieve the goal of settling the marital estate promptly without continuing entanglements. Deferral would not eliminate the need to choose between conflicting methods offered by expert witnesses.

### B. Computing the Current Value of Robert's Nonvested Pension

On cross-appeal, Karen challenged that aspect of the trial court's order which set the salary base upon which Karen's share of the pension will be calculated as Robert's salary at the time of separation plus annual cost-of-living increases until the time of vesting. Karen contends that there are two problems with this. First, it does not account for post-vesting cost-of-living increases (either to retirement payments if Robert retires at vesting or to salary should Robert not retire at vesting). Second, it does not account for salary increases to Robert for promotions Robert might receive between the time of trial and the time of vesting.

Although Karen's cross-appeal relates to the court's order concerning the means of distribution of Robert's pension in 1999 and is thus moot in light of our decision in this case, it does raise one point which also applies to a distribution made as of the time of trial. Karen contends that both Robert's salary and his retirement pay are essentially inflation proof and the court erred in failing to take this into account.[10] The fact that Robert's salary and retirement pay are protected from inflation is unrefuted on the record before us. In these circumstances the court should reduce Robert's anticipated pension benefits to present value by adjusting Robert's future pension benefits upwards for

**6.** A trial court would not abuse its discretion in opting for the *Laing* method despite the employee spouse's willingness to waive if exceptional circumstances convince the court that reliance on the *Laing* method is necessary to achieve an equitable distribution of assets. For example, exceptional circumstances could exist where the non-employee spouse would otherwise have to take an unsecured money judgment against the employee spouse with a substantial risk of non-collection, and the pension is close to vesting.

**7.** We stated in *Laing* that retaining jurisdiction "more evenly allocates the risk of forfeiture between the parties, although it also runs counter to our expressed preference for finalizing a couple's financial affairs as soon as possible." 741 P.2d at 657.

**8.** Schilling contended that the market discount rate had to be adjusted to reflect the fact that Robert's retirement pay will be indexed to inflation and Robert's pay while employed will increase annually "more or less in line with infla-

tion." Because the value of Robert's pay and benefits would thus not be reduced by inflation, Schilling testified that the component of market interest which exists because of inflation must be factored out of the applicable discount rate. By contrast, Sherwin used a 7% discount, a rate which was not adjusted to reflect what interest would be absent the effects of inflation.

**9.** The only uncertainty which would be eliminated by deferral is that actual inflation, and Robert's actual cost of living increases, between 1992 and 1999 will be known. However, given the fact that in 1999 predictions as to future inflation, and inflation driven benefit increases, will have to be made which are of the same character as those which were deferred in 1992, this is not a persuasive reason for deferral. It leads logically to deferral until each benefit is actually received. Neither the parties nor the court view that as desirable in this case.

**10.** The court took into account increases before 1999 but not thereafter.

expected inflation and then discounting them by the market interest rate.[11] The court incorrectly used a calculation which froze Robert's benefits, yet discounted them at market rates. In doing this the court denied Karen the benefit of inflation's impact on Robert's remuneration, while saddling her with the detriment of inflation's effect on the discount rate. This is clearly inequitable. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 540–41, 103 S.Ct. 2541, 2552–53, 76 L.Ed.2d 768 (1983) (inequitable "to deny the plaintiff the benefit of the impact of inflation on ... future earnings, while giving the defendant the benefit of inflation's impact on the interest rate that is used to discount those earnings to present value").

## III. *CONCLUSION*

For the above reasons the judgment is reversed in so far as it relates to the division of the parties' property. This case is remanded for further proceedings in which the court shall treat Robert's pension as vested, value the pensions of both parties, determine and divide the marital component of both pensions, and enter an appropriate offsetting award from other marital property.

REVERSED in part and REMANDED.

---

**11.** If the court finds this method of calculating present value too cumbersome, it may employ the following alternate method. The court may discount Robert's anticipated pension benefits by a "real" interest rate—an interest rate in which inflation is deducted from the market interest rate—without adjusting Robert's expected benefits upward for inflation. This allows the court to calculate present value through the use of a present value table without elaborate computation. *See California Jury Instructions,* App. B, 8th ed. 1994. In theory this alternative method is not as accurate as the method of first adjusting upward for inflation and then discounting by the market interest rate. However, since the alternate method is simpler and will normally yield an acceptable approximation of present value, using it is not error. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 548–49, 103 S.Ct. 2541, 2556, 76 L.Ed.2d 768 (1983); *O'Shea v. Riverway Towing Co.,* 677 F.2d 1194, 1199–1200 (7th Cir.1982).