John A. HARTLEY, Appellant,

v.

Tina M. HARTLEY, Appellee.

No. S–13002.

Supreme Court of Alaska.

April 17, 2009.

---

G.R. Eschbacher and Justin Eschbacher, Anchorage, for Appellant.

Jennifer L. Holland, Law Offices of Jennifer L. Holland, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

John and Tina Hartley's pre-divorce property settlement agreement awarded Tina fifty-seven percent of the monthly benefit accrued in John's Federal Employee Retirement System (FERS) defined benefit plan. The agreement did not specify whether Tina's payments should be based on John's highest three salary years during the marriage or upon his future retirement. Nor did it specify who should bear the cost of Tina's FERS survivor benefit or how that benefit should be divided.

The superior court's FERS qualified domestic relations order (QDRO) based Tina's share on an average of John's highest three salary years at retirement. John contends that it should instead be calculated using the average of his highest three salary years during the marriage. He also argues that the superior court should have held an evidentiary hearing to resolve the dispute, that he should not have to pay part of the cost of Tina's FERS survivor benefit, and that it was error to award Tina one-hundred percent of that survivor benefit.

We affirm. The agreement did not expressly resolve these disputes, and the superior court did not abuse its discretion in resolving them. Nor did it err by failing to hold an evidentiary hearing.

## II. FACTS AND PROCEEDINGS

John and Tina Hartley married in August 1985 and separated in March 2006. Tina sued for divorce in October 2006. In June 2007 John and Tina entered into and filed with the court a property settlement agreement that, among other things, divided the benefits from John's FERS defined benefit plan and from his other three retirement

plans.[1] The agreement's relevant paragraph concerning the FERS plan reads:

Tina Hartley shall be awarded 57.0% of the monthly benefit accrued as a result of John Hartley's participation in the Federal Employees Retirement System (FERS) between August 3, 1985 and October 3, 2006, together with any gains or losses on that 57.0% interest that have accrued since October 3, 2006. John Hartley shall be awarded all other interest in the FERS retirement. Tina Hartley's interest will be addressed through a "separate interest" QDRO or, if that is not permitted by the Plan, a "shared interest" QDRO with a survivor's benefit.

In June 2007 the superior court held a settlement hearing at which John and Tina both testified that they understood the property settlement agreement, that it was fair and equitable, and that they entered into the agreement voluntarily. The superior court then orally found that "[the property] agreement represents a fair and equitable division of the parties['] marital estate."

On the same day, the court issued written findings of fact and conclusions of law in which it again found that the parties' property agreement was fair and equitable and ruled that the "property division provisions shall be ordered as set forth in the parties' Agreement[ ]." The court also then issued a divorce decree.

In November Tina filed proposed QDROs for each of John's four retirement accounts. The proposed QDRO for John's FERS account stated that it was awarding to Tina fifty-seven percent of the marital portion of John's FERS retirement benefits, but did not specify whether her portion would be based on John's average high-three salary years at the time of his future retirement or at the end of their marriage. The proposed QDRO also stated that it was awarding Tina a "pro rata share" of John's survivor annuity

and that John and Tina would equally share the cost of that benefit.

When the proposed FERS QDRO was filed in November 2007 John was fifty-one years old, and as of January 16, 2008 he was still employed by the federal government and had not yet retired.

John filed a partial "opposition motion" in response to Tina's proposed FERS QDRO.[2] He argued that the proposed FERS QDRO did not reflect his understanding of the parties' agreement and that the date for determining the high-three salary years needed to be clarified. He contended that Tina's share should be based on John's high-three salary years as of October 3, 2006, when Tina filed for divorce. He also argued that the property settlement agreement did not define who would pay the cost of the survivor benefit and that Tina should bear fifty-seven percent of that cost. Finally, he requested an evidentiary hearing on his partial opposition motion. Tina opposed John's motion.

In January 2008 the superior court adopted Tina's proposed FERS QDRO and implicitly denied John's partial opposition motion. The FERS QDRO, in relevant part, states:

7. Amount of Former Spouse's Benefit: This Order assigns to Former Spouse an amount equal to fifty-seven percent (57.0%) of the Marital Portion of the Employee's Self–Only Monthly Annuity determined as of the Employee's date of retirement. For purposes of calculating Former Spouse's share of Employee's benefit, the Marital Portion shall be determined by multiplying the Employee's Self–Only Monthly Annuity by a fraction, the numerator of which is the total number of months of Creditable Service under the FERS earned by the Employee during the marriage (from August 3, 1985 to October 3, 2006), and the denominator of which is the total number of months of the Employee's Creditable Service accrued under the

---

1. John and Tina also agreed to divide John's interest in a "Southern Alaska Carpenters Retirement Plan," a "Carpenter's Fund defined contribution plan," and a "Thrift Savings Plan." Per the agreement, for these plans Tina received fifty-seven percent of the benefits accrued during the marriage.

2. John's partial opposition motion discussed all four of the proposed QDROs. John only appeals the court's decision to adopt Tina's proposed FERS QDRO.

FERS (including military service credited to the FERS should the Employee opt out of receiving his military retainer pay) *based on Mr. Hartley's high–3 at the time of retirement. See* generally *Wainwright v. Wainwright,* 888 P.2d 762 at 765 (Alaska 1995).

(Emphasis added.) The FERS order also contained the court's hand-written notation that "oral argument was not necessary to resolve the disputed issues."

John moved for reconsideration, arguing that the order did not reflect his understanding of the property settlement agreement; that the order violated state law by giving Tina an interest in John's post-separation labor; that the court misapplied *Wainwright v. Wainwright;*[3] and that John should not be required to contribute to the cost of the survivor benefit. John's reconsideration motion attached an expert's letter discussing the FERS QDRO and the *Wainwright* case.

The superior court denied John's reconsideration motion. The court held that it had permissibly based the distribution of John's FERS pension on his high-three years at the time of retirement, that it had correctly applied *Wainwright,* and that its holding was also supported by *Faulkner v. Goldfuss.*[4]

The court declined to reconsider John's other arguments.

John appeals.

## III. DISCUSSION

### A. Standard of Review

■■■ We construe property settlement agreements in divorce actions in accordance with basic principles of contract law.[5] Questions of contract interpretation are reviewed de novo.[6]

■■■ When the terms of a property settlement agreement are ambiguous, the superior court "must attempt to resolve [the ambiguity] by determining the reasonable expectations of the contracting parties."[7] If the division of marital property is not determined by an agreement between the parties, the superior court has "wide latitude in fashioning an appropriate property division."[8] We review these determinations for abuse of discretion and reverse only if a review of the record leaves us "with the firm and definite conviction that the [superior] court made a mistake."[9]

■■ A superior court's decision to deny a motion requesting an evidentiary hearing is subject to our independent review.[10] A hear-

---

3. *Wainwright v. Wainwright,* 888 P.2d 762 (Alaska 1995).

4. *Faulkner v. Goldfuss,* 46 P.3d 993 (Alaska 2002).

5. *Zito v. Zito,* 969 P.2d 1144, 1147 (Alaska 1998) (citing *Keffer v. Keffer,* 852 P.2d 394, 397 (Alaska 1993) (holding that husband was not obligated to ex-spouse for payments derived from investment income because dissolution agreement excluded "income earned outside of primary place of employment")).

6. *Id.* at 1147.

7. *Id.* at 1147 n. 4.

8. *Tillmon v. Tillmon,* 189 P.3d 1022, 1031–32 (Alaska 2008) (reviewing for abuse of discretion superior court's implementation of parties' agreed-upon fifty-fifty division of marital portion of husband's military retirement). The husband there argued that the implementation wrongfully allowed his wife to benefit from his future pay raises because it did not limit the marital portion

of the retirement benefit to his current pay level. *Id.* at 1031. The parties disputed what pay level the marital portion of the benefit should be based on. *Id.* at 1031–32.

9. *Id.* at 1032.

10. *Cf. Routh v. Andreassen,* 19 P.3d 593, 595–96 (Alaska 2001) (applying independent judgment standard of review to superior court's decision not to hold an evidentiary hearing before calculating child support income); *see also Acevedo v. Burley,* 944 P.2d 473, 476 n. 2 (Alaska 1997) ("For purposes of determining the standard of review applicable to deciding whether the superior court erred in denying Acevedo's motion without an evidentiary hearing, we draw analogy to review of summary judgment decisions.... [T]he question in this case is whether there is a genuine issue of material fact that, if established, would entitle Acevedo to the relief sought. This is similar to our focus in reviewing summary judgment cases. Therefore, as with summary judgment decisions, we review the superior court's decision using our independent judgment.") (internal citations omitted).

ing is not necessary if "there is no genuine issue of material fact before the court."[11]

## B. The Superior Court Did Not Err by Applying the Time–Rule Formula To Calculate Tina's Share of John's FERS Pension.

This appeal concerns John's FERS defined benefit plan. "A 'defined benefit plan,' as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment."[12] The size of the payment usually depends upon prior salary and years of service.[13] John's FERS defined benefit plan retirement payment will be based on his highest three salary years at the date of his retirement.

The property settlement agreement specifies that Tina is to receive fifty-seven percent "of the monthly benefit accrued as a result of John Hartley's participation in [FERS] between August 3, 1985 and October 3, 2006, together with any gains or losses on that 57.0% interest that have accrued since October 3, 2006." John asked the superior court to interpret this provision as awarding Tina a fifty-seven percent interest in John's FERS pension based on the average of John's three highest salary years during the period of marriage. The superior court instead interpreted the provision as awarding Tina a fifty-seven percent interest in John's FERS pension based on the average of John's three highest salary years at the time of his retirement.

John argues that the court's award was erroneous for two reasons. First, because it is inconsistent with the parties' intentions as expressed by the plain meaning of the agreement's language. Second, because it impermissibly awards Tina a portion of John's post-separation earnings in contravention of our holding in *Schanck v. Schanck.*[14]

Neither argument persuades us that the superior court erred. First, we hold that the superior court's order was consistent with the parties' intentions. In resolving disputes concerning the meaning of an agreement, a court begins by " 'viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms,' in order to determine if those terms are ambiguous— that is, if they are 'reasonably subject to differing interpretation.' "[15] Here, as the superior court found, the property settlement agreement could be interpreted in more than one way. One clause of the agreement specifies that Tina's benefit should be based on John's participation in the plan "between August 3, 1985 and October 3, 2006." This clause implicitly supports basing her benefit on John's high-three salary years during the period of marriage. But another clause of the agreement grants Tina "any gains and losses" on the benefit "that have accrued since October 3, 2006." This clause implicitly supports including any gains (or losses) attributable to John's post-separation employment and basing Tina's benefit on John's high-three years at retirement. John's reply brief acknowledges the ambiguity by stating that the agreement's relevant paragraph "contains within its first sentence, contradictory commands." We review questions of contract interpretation de novo,[16] and agree with the superior court's holding that the provision was ambiguous.

We hold that the superior court did not abuse its discretion in resolving this ambiguity. A court must resolve any ambiguity in contract language by determining the reasonable expectations of the contracting parties in light of "the language of any disputed provisions, other provisions, relevant extrinsic evidence, and case law interpreting similar provisions."[17] The superior court held

11. *Routh,* 19 P.3d at 596.

12. *Comm'r, Internal Revenue v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 154, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993).

13. *Id.* at 154, 113 S.Ct. 2006.

14. *Schanck v. Schanck,* 717 P.2d 1, 3 (Alaska 1986).

15. *Zito v. Zito,* 969 P.2d 1144, 1147 n. 4 (Alaska 1998) (quoting *Wessells v. State, Dep't of Highways,* 562 P.2d 1042, 1046 (Alaska 1977)).

16. *Id.* at 1147 n. 4.

17. *Keffer v. Keffer,* 852 P.2d 394, 397 (Alaska 1993).

that "[a]lthough there is some logic" to basing the high-three-years calculation on John's wages at the time of separation, basing the calculation on John's high-three years at retirement is "more equitable and more logical." In reaching this conclusion, the superior court looked at a letter submitted by John's expert and at relevant precedent. The court noted that using John's approach "would effectively award to him considerably more than 43% of the monthly benefit accrued during the marital years, in contravention of the parties' agreement."[18]

As Tina concedes, the wording of the disputed term in the settlement agreement "was more appropriate to a defined contribution plan ... than a defined benefit plan." When a trial court divides the marital portion of retirement benefits in a defined benefit plan, it has two choices for distributing the benefits: the "immediate offset method" and the "deferred distribution method."[19] Under the immediate offset method, the value of the marital portion of the pension is reduced to present value and divided at the time of divorce, with the nonowning spouse receiving a lump sum payment.[20] Under the deferred distribution method, "[t]he distribution is based upon the benefits actually received in the future, and not upon a prediction of the benefits which would be received in the future...."[21] Turner notes in his treatise on equitable distribution of property that an advantage of the deferred distribution method is that "the division is based only upon actual facts.... In every case, the nonowning spouse will receive his or her exact correct share of the retirement benefits."[22] Under the terms of John's defined benefit retirement plan, calculation of his actual future retirement benefit will be accomplished by applying a percentage to the average of his top three earning years at the time of retirement. If some other benefit formula not reflective of John's actual retirement benefit calculation were to be substituted in the QDRO,[23] as John advocates, Tina would not receive her equitable share of the marital portion of John's retirement benefit.

The language of the parties' agreement is consistent with the intent to defer distribution of an equitable share of the marital portion of the retirement benefit to be paid to John upon his retirement. We are not left with the firm and definite conviction that the superior court made a mistake,[24] and its determination that using John's high-three salary years at retirement is consistent with the parties' intentions was not an abuse of discretion.

> But Tina's $502 award would be only thirty-nine percent of the $1,298 marital portion of what the total annuity at retirement would be using the hypothetical numbers above ($2,131). As the superior court noted, this is "not the 57% share as to which both parties agreed."

**18.** John's expert calculated how much Tina would receive using John's high-three salary years at the time of his retirement, versus how much she would receive using his high-three salary years during the period of marriage. He assumed for purposes of the calculation that John would remain with his current employer until retiring at age sixty and that the average of his high-three salary years at retirement would be $100,000. Using these numbers, John's monthly annuity, based on his high-three salary projected at his future retirement, would be $2,131. In contrast, his high-three average salary at the time of the divorce was $67,844, and his monthly annuity at retirement based on that amount would be $1,446.

Using John's approach, Tina would get $502 a month. This is fifty-seven percent of the $880 marital portion of what the total annuity would be using John's high-three salary years during the marriage. (The marital portion is calculated by dividing the portion of John's employment that occurred during the marriage (fifteen years and seven months) by the total duration of his employment (twenty-five years and seven months), and multiplying the result by the total annuity.)

**19.** 2 Brett R. Turner, Equitable Distribution of Property § 6:32, at 192–93 (3d ed.2005).

**20.** *Id.*

**21.** *Id.* at 197.

**22.** *Id.*

**23.** Turner has described the use of QDROs to direct the plan administrator to send separate retirement checks to each spouse as the "preferred method" of paying a deferred distribution award, *id.* at 203, and this was the method used by the trial court in this case.

**24.** *Tillmon v. Tillmon,* 189 P.3d 1022, 1032 (Alaska 2008).

The result would be the same had the superior court held that the parties did not reach an agreement as to what years the high-three salary should be based on, and that the property settlement agreement therefore did not address the issue. When there is no agreement between the parties as to the division of a particular item or class of property, the superior court has discretion to divide that property equitably.[25] The superior court here correctly reasoned that granting Tina an interest based on John's high-three salary years at retirement was the most equitable approach because it most closely effectuated the parties' intention to award fifty-seven percent of the four pensions to Tina. That decision was not an abuse of discretion.

We also disagree with John's argument that the superior court's order impermissibly awarded Tina an interest in John's post-marital property. He argues that this award violates our holding in *Schanck v. Schanck*,[26] and punishes him for continuing to work for his current employer. *Schanck* held that "[a]s a general rule ... property accumulated with income earned after a final separation that is intended to, and does in fact, lead to a divorce is excluded from the category of marital property, as long as it is obtained without the invasion of any pre-separation marital asset."[27] *Schanck* addressed a question not at issue here: whether marital property includes property accumulated after separation but before divorce. *Schanck* did not address defined benefit plans or classify a retirement benefit as non-marital property, and does not bar using John's high-three salary years at the time of retirement. *Schanck* does not apply here.

Nor does the award penalize John for remaining with his current employer. We rejected a similar argument in *Tillmon v. Tillmon*.[28] The former husband in that case contended that the property division allowed his former wife's "share of his retirement to increase in value as a result of later promotions and pay raises."[29] But as we explained, "the marital share of the retirement will continue to decrease as a percentage of the entire retirement as he extends the duration of his service" with his current employer.[30]

The superior court cited *Wainwright v. Wainwright*[31] and *Faulkner v. Goldfuss*[32] in support of its decision to use John's high-three salary years at the time of retirement. *Wainwright* held that the non-employee spouse was entitled to receive a portion of the employee spouse's cost of living increases after separation.[33] *Faulkner* endorsed the use of a retirement account division formula based on the entire length of the employee spouse's career.[34] Although neither case is squarely on point, both support the superior court's decision to divide John's FERS pension using his high-three salary years at retirement.

Turner's property division treatise supports the superior court's approach, which is known as the "marital foundation theory."[35] This theory reasons "that a post-divorce merit increase is based upon the employee's entire history of service to the employer. In other words, the postdivorce increases are built upon a foundation of prior marital efforts" and therefore the increases are not

---

**25.** *Id.* at 1030–32 (*see* note 8 above).

**26.** *Schanck v. Schanck*, 717 P.2d 1, 3 (Alaska 1986).

**27.** *Id.* at 3.

**28.** *Tillmon v. Tillmon*, 189 P.3d 1022, 1032 (Alaska 2008).

**29.** *Id.* at 1032 n. 35.

**30.** *Id.*

**31.** *Wainwright v. Wainwright*, 888 P.2d 762 (Alaska 1995).

**32.** *Faulkner v. Goldfuss*, 46 P.3d 993 (Alaska 2002).

**33.** *Wainwright*, 888 P.2d at 765–66.

**34.** *Faulkner*, 46 P.3d at 1003 n. 36.

**35.** TURNER, *supra* note 19, at 171–73, 183. The "time rule" formula used by the superior court in this case is analogous to the "marital foundation theory." *See In re Marriage of Hunt*, 909 P.2d 525, 534 n. 8 (Colo.1995).

separate property.[36] The commentator describes this approach as "better policy" because it "avoids undervaluation of contributions made early in a marriage" and "gives more dollars to the spouse who assisted in the development of the employee's career, and less dollars to the spouse who was the passive beneficiary of that career after it was established." [37] We approve this policy and conclude that this approach is generally the most equitable. Absent clear language to the contrary in a property division agreement, a court should base the division of retirement benefits on the employee spouse's high-three salary years at the time of retirement.

### C. The Superior Court Permissibly Declined To Conduct an Evidentiary Hearing To Determine the Intent of the Parties.

■ John argues that the superior court erred by not granting his request for an evidentiary hearing to determine the meaning of the ambiguous terms in the property settlement agreement. The superior court held that "oral argument was not necessary to resolve the disputed issues" and also implicitly rejected John's request for an evidentiary hearing. We exercise our independent judgment in reviewing a refusal to grant an evidentiary hearing.[38]

John cites *Burns v. Burns*[39] to support his contention that "[w]hen a contract provision is ambiguous, the intent of the parties is to be determined by a resort to extrinsic evidence as determined at a hearing wherein evidence is presented." But *Burns* does not stand for this proposition. The parties there disputed an ambiguous term in a property division agreement, and the trial court resolved the dispute after conducting an evidentiary hearing.[40] We affirmed, but never

stated that an evidentiary hearing was required there, or that an evidentiary hearing is invariably required to resolve every dispute about ambiguous terms in a settlement agreement.[41]

■ An evidentiary hearing is not necessary if there is no genuine issue of material fact.[42] Here there was no genuine factual dispute, only a legal dispute over the proper interpretation of the property settlement agreement. John points to no evidence that would have resolved the ambiguity in the settlement agreement by establishing the parties' intent. The only extrinsic evidence John proposed below was testimony from his expert, and the court considered the expert's extensive analysis and quoted from it in denying John's reconsideration motion. Because there was no genuine issue of material fact, we hold that the superior court did not err in denying John's request for an evidentiary hearing.

### D. The Superior Court Permissibly Ordered John To Pay a Portion of the Cost of the FERS Survivor Benefit.

■ John argues that the superior court erred by ordering him to pay half the cost of the FERS survivor benefit. He argues that either Tina should bear the full cost of the benefit, or the issue should be remanded for an evidentiary hearing. The superior court held that dividing the cost equally was appropriate because Tina's survivor benefits would revert to John if she predeceased him.

John cites *Berry v. Berry*[43] for the proposition that this court "has held that it was not error for the trial court to require the wife to pay for the cost of the survivor benefit." *Berry* is factually distinguishable and does not support John's argument. In *Berry*, as in this case, the parties disagreed about who

---

**36.** TURNER, *supra* note 19, at 171. Among other states, Colorado, Delaware, Indiana, New Hampshire, and Illinois apply the marital foundation theory to dividing post-divorce increases in salary and cost of living payments. *Id.*

**37.** *Id.* at 183.

**38.** *Cf. Routh v. Andreassen*, 19 P.3d 593, 595–96 (Alaska 2001) (*see* note 10 above).

**39.** *Burns v. Burns*, 157 P.3d 1037 (Alaska 2007).

**40.** *Id.* at 1039–41.

**41.** *Id.*

**42.** *Routh v. Andreassen*, 19 P.3d 593, 596 (Alaska 2001).

**43.** *Berry v. Berry*, 978 P.2d 93 (Alaska 1999).

should pay the cost of the survivor benefit.[44] But there the superior court declined to grant a survivorship benefit to the ex-wife.[45] We held in *Berry* that the superior court implicitly ruled that the ex-husband should not pay for survivor benefits.[46] Because the ex-husband had offered to carry a survivor benefit at the ex-wife's expense, we held that he should facilitate covering her under the plan.[47] *Berry* does not support John's argument that Tina should be required to pay the full cost of the survivorship benefit.

John and Tina's property settlement agreement did not address the cost of the FERS survivor benefit. If there is no agreement as to the division of a particular piece of property, the superior court has discretion to divide that property equitably.[48] The superior court therefore had discretion to select an appropriate division based on what the court knew about the parties' economic situations.

The superior court's decision is also supported by the agreement's treatment of John's other retirement accounts. The paragraph dividing John's Southern Alaska Carpenters Retirement Plan states that it awards Tina a fifty-seven percent interest in the plan's survivor benefit and requires her to bear fifty-seven percent of the cost of that benefit.[49] This provision gives rise to opposite inferences regarding the parties' agreement concerning the FERS plan. This provision could imply that the parties must also have intended to impose fifty-seven percent of cost on Tina for the FERS survivor benefit. But it could also be read to imply that the parties were intentionally silent about the cost of the FERS plan survivor benefit because they could not agree how to divide the cost. Or it could imply that they simply overlooked the issue. Regardless, their failure to express an agreement on this aspect of the

FERS plan means that the superior court had discretion to divide the cost equitably.

The agreement grants Tina fifty-seven percent shares of the balances in two of John's four retirement accounts, and fifty-seven percent shares of the pension benefits payable under John's FERS plan and Southern Alaska Carpenters plan. Imposing on Tina a large percentage of the cost of the survivor benefit for the FERS plan would make it impossible to achieve the fifty-seven/forty-three division intended by the parties both globally and for the FERS benefits specifically. We therefore hold that the superior court did not abuse its discretion by requiring John and Tina to split the cost of the FERS survivorship benefit.

■ Likewise, we decline to remand for an evidentiary hearing. John did not specify what additional extrinsic evidence, apart from the expert's letter considered by the court, he would have offered had the superior court granted such a hearing. He fails to show that there was a genuine issue of material fact, and that the superior court erred by not granting a hearing.[50]

### E. The Superior Court Permissibly Awarded Tina One–Hundred Percent of the Survivorship Benefits.

■ John argues that the superior court erred by awarding Tina one-hundred percent of his FERS survivor annuity. He argues that "the agreement limits her to 57 percent of the accrued survivor benefit."[51] This latter contention is not an accurate characterization of the agreement. Although the parties generally agreed that Tina should receive only fifty-seven percent of John's four retirement plans, the agreement is silent about how to divide the FERS

44. *Id.* at 97.

45. *Id.*

46. *Id.* at 97–98.

47. *Id.* at 98.

48. *Tillmon v. Tillmon*, 189 P.3d 1022, 1030–32 (Alaska 2008) (*see* note 8 above).

49. The agreement's paragraphs dividing John's Carpenter's Fund defined contribution plan and

his Thrift Savings Plan do not address survivor benefits.

50. *See* Part III.C above.

51. John also argues that the award impermissibly grants Tina a portion of his future earnings. This argument was addressed and dismissed above. *See* page 12 above.

survivorship benefit. The superior court cited Section 8445 of the United States Code in awarding the FERS survivor benefit to Tina.[52] That statute states that "a former spouse of a deceased employee ... is entitled to an annuity under this section, if and to the extent expressly provided for ... in the terms of any decree of divorce or annulment or any court order or court-approved property settlement agreement incident to such decree." [53]

The parties' agreement limits Tina's share of the survivor benefit for a different retirement account to an amount "equal to her proportional interest," but does not explicitly limit Tina's share of the FERS survivor benefit in any way.

Because the parties' agreement did not squarely address the division of the FERS survivor benefit, the superior court had discretion to divide the property equitably in light of the parties' circumstances.[54] The superior court could have chosen to do as John wished: award Tina fifty-seven percent of the FERS survivorship benefits, allowing John to leave his remaining forty-three percent to another person. The property agreement's division of John's Southern Alaska Carpenters Retirement Plan stated that it was awarding to Tina "a survivor's benefit equal to her proportional interest." By expressly addressing an issue the FERS provision did not mention, this passage permits different inferences.[55] The parties' choice in dealing with the Southern Alaska Carpenters plan might justify adopting a similar approach for the FERS plan. But John does not argue that the superior court should have looked to the division of that retirement plan in deciding how to divide the FERS survivor benefit. Instead, he argues that the FERS survivor benefit award impermissibly grants Tina a portion of his future earnings. We addressed and rejected that contention in Part III.B above.

We have consistently recognized that the superior court is in the best position to assess each party's circumstances and to determine what division of property is most equitable.[56] The record does not leave us with the firm and definite conviction that the superior court made a mistake, and we therefore affirm the superior court's decision.

## IV. CONCLUSION

We therefore AFFIRM the superior court's FERS QDRO.

---

52. 5 U.S.C. § 8445 (2007).

53. *Id.* § 8445(a).

54. *Tillmon v. Tillmon,* 189 P.3d 1022, 1030–32 (Alaska 2008) (*see* note 8 above).

55. *See* Part III.D.

56. *Tillmon,* 189 P.3d at 1030; *see also, e.g., Zito v. Zito,* 969 P.2d 1144, 1146 (Alaska 1998).