Francis Lynn **HICKS**, Appellant,

v.

Grace Lily **PLEASANTS**, Appellee.

No. S–12110.

Supreme Court of Alaska.

May 25, 2007.

---

Robert C. Erwin, LLC, Anchorage, for Appellant.

Michael Gershel, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The trial court divided a divorcing couple's property following entry of a default divorce. The defaulted defendant in the underlying divorce asserts that the court's property division differed in kind and exceeded the amount prayed for in the complaint and is therefore void. He further argues that the court applied an incorrect standard of proof to the property division. Because we determine that the language in the prayer for relief was sufficient to put the defendant on notice that the court would divide the marital estate, we conclude the court had the authority to adjudicate the property rights of the parties. However, because the court applied an erroneous standard of proof at the property division hearing, we vacate the property division order and remand for a new property division.

## II. FACTS AND PROCEEDINGS

Grace Pleasants and Francis Hicks were married in 1985. In February 2005 Pleasants served Hicks with a summons and complaint for divorce. Hicks did not file an answer or otherwise appear in the action, and Pleasants moved for entry of default. The clerk of court entered default against Hicks in April 2005.

Pleasants sent Hicks a letter notifying him of the scheduled default hearing. On June 6, 2005, Master Andrew Brown commenced a "default divorce hearing." Hicks arrived as the hearing was underway. He told Master Brown that "[when] I defaulted—I only defaulted because I was not contesting the fact of divorce. . . . I wasn't stipulating to any values or anything like that because none of that had been put before me." The master informed Hicks that although he was a defaulted party, Hicks maintained the right to a contested default hearing. The master then set a contested default divorce hearing for July 22. He issued an order to "hear . . .

evidence and argument concerning the contested default divorce." The order required both parties to file with the court and exchange up-to-date financial declarations, copies of their last two pay stubs, and 2004 federal tax returns. The order also noted that "[s]ince it will be a default judgment hearing the following applies ...

> [O]nce a default has been entered and entry of judgment pursuant to the default is sought, the function of the trial court is not to weigh conflicting evidence; rather, the court must make the sole determination whether the allegations of the party in whose favor the default has been entered are susceptible of proof.... [G]iven conflicting but legitimate evidence on both sides, the court is bound to enter judgment for the party in whose favor the default has been entered.

The hearing was held July 22nd and July 26th. Neither party was represented by an attorney. At the hearing, the parties disagreed primarily about the values of various items of personal property, the value of a condominium, a bank note, and the characterization of monies withdrawn from a trust account. Following the hearing, Master Brown took the property distribution issue under advisement. The superior court entered a partial decree of divorce.

On August 9, 2005, the master issued his report, findings of fact, and proposed property division. The report recommended allocating property and debts to both parties and that Hicks pay Pleasants a monthly cash sum to equalize the difference in marital debt allocated to each. Hicks then retained coun-

sel and objected to the report. He asked that the court modify or set aside the recommendations on the grounds that the judgment exceeded Pleasants's prayer for relief and was therefore void under Alaska Civil Rule 54. He further argued that the court applied an incorrect standard of proof in valuing and dividing the marital property. Without comment on Hicks's objections, Superior Court Judge Stephanie Joannides adopted the report. Hicks filed for and was granted a stay of judgment. Hicks now appeals the property division order.

## III. STANDARD OF REVIEW

■ The validity of a judgment is a question of law to which we apply our independent determination.[1]

■ The entry of a default judgment and the refusal to set aside a default judgment are reviewed for abuse of discretion.[2] An abuse of discretion is found only where we are left with "a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling."[3]

■ We review legal determinations made during a trial court's division of property *de novo*.[4]

## IV. DISCUSSION

### A. The Court's Property Division Falls within the Scope of the Prayer for Relief.

■ Hicks does not contest the entry of default or the divorce decree portion of the default judgment.[5] But he does contend that

---

1. *See Kennecorp Mortgage & Equities, Inc. v. First Nat'l Bank of Fairbanks,* 685 P.2d 1232, 1236 (Alaska 1984).

2. *Melendrez v. Bode,* 941 P.2d 1254, 1256 (Alaska 1997).

3. *Lovell v. Lovell,* 645 P.2d 151, 152 (Alaska 1982). *Accord Cook v. Rowland,* 49 P.3d 262, 264 (Alaska 2002).

4. *Leis v. Hustad,* 22 P.3d 885, 887 (Alaska 2001).

5. When an application for default is made under Alaska Civil Rule 55, a trial court must exercise its discretion in determining whether a judgment

should be entered. *Peter Pan Seafoods, Inc. v. Stepanoff,* 650 P.2d 375, 378 (Alaska 1982). While Hicks did not contest the entry of default or request that the court set the default aside, we recognize that he was not represented by counsel. We have held that a trial judge should inform *pro se* litigants of the proper procedure for the action they are attempting to accomplish. *Breck v. Ulmer,* 745 P.2d 66, 75 (Alaska 1987). Civil Rule 55(e) provides that "[f]or good cause shown the court may set aside an entry of default." "Good cause" is a question of equity left to the discretion of the trial court upon showing of a meritorious defense. *Hertz v. Berzanske,* 704 P.2d 767, 771 (Alaska 1985) *superseded by statute on other grounds as noted in McConkey v. Hart,* 930 P.2d 402, 407 n. 4 (Alaska 1996). In this

because Pleasants did not list each marital asset and debt and its corresponding value in her prayer for relief, the property division order was outside the scope of relief requested. Judgments issued outside the scope of the prayer for relief are void.[6]

■ Civil Rule 54(c) limits the scope of recovery in default judgments: "a default judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."[7] In order for a default judgment to comply with Rule 54(c), a complaint must therefore give a defendant "adequate notice upon which to make an informed judgment on whether to default or actively defend."[8]

■ In the prayer for relief in her complaint, Pleasants requested that the court "adjudicate the assets and liabilities in a fair and [e]quitable manner." Hicks contends that this language is insufficient to permit the court to equitably divide the assets and debts of the parties in a default context. He asserts that only where a prayer for relief specifies each piece of marital property and debt and its value can a court issue a default judgment. We reject Hicks's contention.

If Pleasants had included each asset and debt in her complaint, and its corresponding value, both the items and their values could then be considered "factual allegations" of the complaint. Where the court determines that a defendant is in default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[9] Therefore, if Pleasants had listed each item as Hicks contends, and Hicks had defaulted, his default would obviate the need for any subsequent hearing on valuation of the property. Pleasants's claim would be for a "sum certain" within the scope of Alaska Civil Rule 55(b) and the clerk, rather than the court, could theoretically enter default judgment.[10] Civil Rule 55 therefore already contemplates the very procedur-

---

case Hicks arrived at the June hearing a few minutes late. He promptly informed the court that while he had agreed to be defaulted to the divorce, he did not intend to stipulate to the values of any of the property and debts at issue. In light of the relative ease of setting aside a default and Hicks's status as a *pro se* litigant, we note that the court could have construed Hicks's statements as a request to set aside the default.

6. Alaska Civil Rule 60(b) provides, in part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [if] ... the judgment is void." A judgment is void where "the defendant was not given proper notice of the action and opportunity to be heard ... or where there was a failure to comply with such requirements as are necessary for the valid exercise of power by the court." *Rowland v. Monsen*, 135 P.3d 1036, 1038 (Alaska 2006).

7. *Melendrez*, 941 P.2d at 1256–57; 46 Am.Jur.2d *Judgments* § 296 (1964).

8. 46 Am.Jur.2d *Judgments* § 296 (1964). *See also* 10A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2663 (1st ed.1983); *Brown v. Lange*, 21 P.3d 822, 825 (Alaska 2001) ("[I]n interpreting our civil rules we have often looked to identical federal counterparts for guidance.").

9. *Valley Hosp. Ass'n, Inc. v. Brauneis*, 141 P.3d 726, 728 (Alaska 2006) (quoting 10A FEDERAL PRACTICE AND PROCEDURE § 2688).

10. Rule 55 provides for judgment by the clerk under 55(b) only where the claim is for a "sum certain," and judgment by the court under 55(c) "in all other cases." Rule 55 states in pertinent part:

(b)(1) *Failure to Appear*. If the defendant has been defaulted for failure to appear and the plaintiff's claim(s) is for a sum certain or for a sum that can by computation be made certain, upon the filing of an application for default judgment ... the clerk shall enter default judgment for the amount due....

. . . .

(c)(1) In all other cases the party entitled to a default judgment shall apply to the court therefor.... If the party against whom default judgment is sought has appeared in the action, that party ... shall be served with written notice of the application for judgment.... If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

. . . .

(c)(3) If the amount of damages claimed in an application to the court for default judgment is unliquidated, the applicant may submit evidence by affidavit showing the amount of damages and if, under the provisions of paragraph (1) of this subdivision, notice of the application is necessary, the parties against whom judgment is sought may submit affidavits in opposition.

al scheme that Hicks suggests is somehow necessary for entry of judgment under Rule 54.

Even where a prayer for relief does not specify the property subject to division or the exact parameters of the division requested, we have held that a more general claim can be sufficient to invoke the court's jurisdiction to adjudicate property rights. In *Rhodes v. Rhodes*,[11] the complaint alleged that "there are property rights to be adjudicated," sought "such other and further relief as the court might deem equitable," and listed the equity of the family home and business but did not ask for a judicial division of the property of the parties.[12] The allegations were admitted by defendant.[13] We relied on the language in the complaint and the facts in the record, which reflected that both parties were previously aware of the property dispute and had contemplated that the issues would be before the court, in upholding the superior court's authority to adjudicate the property rights.[14]

■ The plain language in Pleasants's prayer for relief contemplated the division of property *and* liabilities. Hicks's claim that this language failed to provide him with notice is belied by the language. Moreover, Hicks's status as Pleasants's husband renders him uniquely situated to and intimately familiar with the property subject to division. As one California court noted:

> [Allowing a default and default judgment to stand against the defaulting spouse] makes sense in the marital dissolution arena, where the parties are both aware of the property subject to division, the respond-

ing party knows that the petitioner seeks a division of that property, and the court is statutorily bound to value and divide the community property equally.[15]

Finally, we note that Alaska's civil rules clearly contemplate that a party's identification and itemizations of assets, liabilities, and their proposed values in a divorce proceeding might not be produced until trial nears. Alaska Civil Rule 90.1 allows parties to a divorce proceeding involving property disputes to file a list of items and debts at issue five days before trial.[16] Hicks's claim that Pleasants was required to list every asset and debt and their value immediately upon filing her complaint in order to receive a default judgment is therefore without merit.

Hicks further asserts that "the Master took the legal view that Rule 54(c) does not apply to default divorce proceedings." Hicks relies on *Oaks v. Grocers Wholesale, Inc.*[17] for the proposition that the court's order violated the requirements of Rule 54(c).[18] In that case, Oaks gave a promissory note to Grocers and secured the note by property. Oaks defaulted on the note. Grocers sued, claiming $19,000 plus interest "now due and owing," and requested a foreclosure and sale of the mortgaged property.[19] The clerk of court entered a $20,000 default judgment against Oaks on the note.[20] On appeal, we held that the default judgment was improper because the plaintiff's demand for judgment did not include a request for a money judgment and therefore the plaintiff's relief was limited to the amount satisfied through a sale of the property.[21]

**11.** 370 P.2d 902 (Alaska 1962).

**12.** *Id.* at 904

**13.** *Id.*

**14.** *Id.* at 904–05. While *Rhodes* was not a default judgment case, its recognition of the court's authority to make a fair and just disposition of the property rights of parties where a defendant is aware of the need to adjudicate those rights is equally applicable here.

**15.** *Cassel v. Sullivan, Roche & Johnson*, 76 Cal. App.4th 1157, 90 Cal.Rptr.2d 899, 903 (Cal.App. 1999).

**16.** Civil Rule 90.1(e) provides: "In divorce cases involving property division disputes ... the par-

ties shall file and serve ... 5 days before trial is scheduled to begin ... (1) a list, including a brief description of all assets and liabilities of the parties, whether owned jointly or individually...."

**17.** 377 P.2d 1001 (Alaska 1963).

**18.** *Id.* at 1003.

**19.** *Id.* at 1002.

**20.** *Id.*

**21.** *Id.*

Unlike *Oaks*, here Pleasants's complaint plainly sought an equitable distribution of "liabilities" and therefore contemplated that either party could be left with more outstanding debts than the other. Moreover nowhere does the record support Hicks's argument that the court was unaware of or ignored the limitations imposed by Rule 54(c). Master Brown plainly contemplated Rule 54(c) at the hearing as evidenced by his attention to what relief was requested: "[the prayer for relief] has the basic language ... that the court adjudicate the assets and liabilities in a fair and equitable manner ... even though [Pleasants] didn't specify any of the particular items of property or debts she wanted to divide...." This "basic language" was sufficient to put Hicks on notice that the court would divide the marital property.[22]

For all of these reasons, we hold that the language in Pleasants's prayer for relief was sufficient to put Hicks on notice that the court would undertake to divide the marital estate. Because he elected to default in the face of that notice, the court could properly exercise its jurisdiction and adjudicate the property rights of the parties. The property division order is therefore consistent with Civil Rule 54.

## B. The Court Applied an Incorrect Standard of Law in Adjudicating the Property Rights of the Parties.

Hicks's second argument is that the trial court incorrectly applied *Syndoulos Lutheran Church v. A.R.C. Industries, Inc.*,[23] thereby (1) ignoring Pleasants's burden of proof at the hearing; (2) dividing the property "solely on the testimony of [Pleasants];" and (3) denying Hicks due process. He contends that the court's application of *Syndoulos* im-

properly shifted the burden of proof and precluded the court from independently considering the evidence. Because a divorcing couple's property division falls within a unique category of family law defined by well-established procedures, and because *Syndoulos* is more properly confined to the traditional liability context of default judgments, we conclude that *Syndoulos* does not apply in the context of property division.

In *Syndoulos*, plaintiff sued a subcontractor business and Farr, alleging Farr was an "associate or partner" of the subcontractor.[24] The clerk entered default. At the post-default trial on damages, Farr appeared and attempted to introduce evidence that he was not a partner in the business as originally alleged.[25] Judgment was entered against all defendants, but on reconsideration the judgment against Farr was quashed because the trial court was not persuaded that Farr was a partner.[26] On appeal, we held that Civil Rule 55(c)(1) permits the court to question a defendant's liability at his damages trial under certain circumstances:

If ... in order to enter the judgment it is necessary for the plaintiff to present evidence supporting one or more of the plaintiff's allegations and if the plaintiff is unable to adduce any evidence tending to support the questioned allegations, then a judgment should be entered dismissing the plaintiff's complaint. The plaintiff need not, however, establish the truth of the allegations by a preponderance of the evidence.[27]

We went on to note: "Given conflicting but legitimate evidence on both sides, the court is bound to enter judgment for the party in whose favor the default has been entered."[28] Thus the defaulting party was

---

**22.** Hicks cites *Fehlhaber v. Fehlhaber*, 681 F.2d 1015 (5th Cir.1982), as authority for the proposition that a default judgment that exceeds the amount specified in the complaint must be reduced. However, California has subsequently rejected this approach. *See In re Marriage of Andresen*, 28 Cal.App.4th 873, 34 Cal.Rptr.2d 147, 152–53 (1994) (noting due process satisfied in marital dissolution action where petitioner checked box on standard court form indicating type of relief requested; no greater specificity required).

**23.** 662 P.2d 109, 112 (Alaska 1983).

**24.** *Id.* at 110.

**25.** *Id.* at 110–11.

**26.** *Id.* at 111.

**27.** *Id.* at 112.

**28.** *Id.* (quoting *In re Air West Sec. Litigation*, 436 F.Supp. 1281, 1289 (N.D.Cal.1977)).

left to bear a heavy burden if he or she elected to later challenge allegations of the complaint that were deemed admitted by default. Because plaintiff had relied on the entry of default to establish its allegation that Farr was a partner, and because plaintiff had not been permitted an opportunity to rebut Farr's evidence disproving the partnership, we reversed and remanded.[29]

■ Hicks contends that *Syndoulos* was only intended "to permit the trial court to have a limited ability to focus on liability issues." He argues that by applying *Syndoulos* to the default hearing on property distribution, the court divided the property and debts solely on the basis of Pleasants's testimony.

Hicks's contention concerning how the court applied *Syndoulos* has merit. In the final property division Master Brown noted:

> Because this has been a contested default divorce consideration of the facts and law has been based on the *Syndoulos* "rule" ... except in the particular instances noted below, while Mr. Hicks may have disputed various parts of Ms. Pleasants' testimony, her testimony has been given the greater weight because, as noted in *Syndoulos*, "if the evidence offered by the defaulted party merely tends to show that an allegation is not true, then the allegation must be taken as true."

The *Syndoulos* standard of weighing conflicting evidence in favor of the non-defaulting party serves as a mechanism for circumscribing attempts by a defaulted party to attack the validity of the allegations considered "proven" by the party's default. In *Syndoulos*, this standard was applied and directed at the question of liability as it arose in the context of a damages hearing. Nowhere, however, have we held that this standard also applies to factual questions that are

not pled in the original complaint, or to a determination of damages in cases where a hearing is required to determine damages.[30]

Pleasants suggests that this court's decision in *Snyder v. American Legion Spenard Post No. 28*[31] requires *Syndoulos's* application in "damages actions." But *Snyder*, at most, extends the *Syndoulos* rule to cases involving liability for specifically-alleged amounts of damages or where the questions of liability and damages are intertwined. In *Snyder*, Post 28 alleged that its finance officer, Snyder, wrote 144 checks payable to himself in the amount of $111,522 and failed to provide an accounting. The Post sued Snyder for misappropriation of these funds.[32] When Snyder failed to appear for trial, the superior court entered summary judgment against him based on an earlier motion that Snyder had failed to oppose.[33] On appeal, we held that the judgment was proper because Snyder's failure to appear at trial meant that he was a defaulting party under Civil Rule 55(c)(1) to whom no further notice was owed. Moreover, because the damages claim satisfied the sum certain criterion, "no hearing on damages was required."[34] In reaching this conclusion we explained that the *Syndoulos* "could not possibly be rebutted" standard would apply if there had been a damages hearing "because this is in part an accounting action in which liability and damages are inextricably intertwined."[35] We explained that there was a well-pleaded allegation that Snyder fraudulently embezzled each of the checks, and that there was also some evidence that not all of the checks represented fraudulent transactions. Employing the *Syndoulos* standard, we concluded that the evidence of lack of fraud was not "uncontroverted evidence" and was insufficient to overcome a default.

Unlike *Syndoulos*, Hicks's default status did not arise from a civil action where "liabil-

**29.** *Id.* at 113.

**30.** No hearing on damages is required when damages are "for a sum certain or for a sum that can by computation be made certain," Alaska R. Civ. P. 55(b)(1), or where the amount of damages claimed is not "unliquidated." Alaska R. Civ. P. 55(c)(3).

**31.** 119 P.3d 996 (Alaska 2005).

**32.** *Id.* at 997.

**33.** *Id.* at 997–98.

**34.** *Id.* at 1002.

**35.** *Id.* at 1002 n. 8.

ity" was at issue. And unlike *Snyder*, this is not a case in which damages for a sum certain are claimed or where the questions of liability and damages are inextricably intertwined. This case instead concerns a party who defaults to a divorce proceeding and then desires to contest the parameters of a subsequent property division. We view these as distinctly different inquiries, and hold that where marital property remains to be divided, a party's default to the underlying divorce action does not trigger *Syndoulos's* applicability to the property division.

▮▮▮▮▮ We have for decades articulated a well-defined three-step process that courts must engage in when dividing property upon divorce.[36] We therefore conclude that regardless of default, the trial court must "(1) determin[e] what property is available for distribution; (2) valu[e] the property; and (3) allocat[e] the property equitably."[37] *Syndoulos* does not change either party's burden of proof, and the trial court's role as fact finder, in this distribution process.[38]

A review of the record indicates that the court applied *Syndoulos* in reaching its findings and recommendations on *at least* five disputed property issues.[39] On each, we find this application to be problematic.

### (1) The trust withdrawal

The court characterized an $88,500 withdrawal made by Pleasants from Pleasants's personal trust fund as a loan to the marriage and therefore as a marital liability. Evidence presented on the issue was confined to the conflicting testimony of the parties. Hicks objected to the characterization of the money as a loan. He asserted that one-half of the funds were used to support Pleasants's separate business enterprise. Pleasants's testimony revealed that the money was taken out for the couple to live on, that the purpose of the trust was for "investments or [my] personal savings," and that the trust limited the types of things she could use the monies for. Pleasants further testified that documents existed which discussed the trust fund, interest rates, and other details, but did not provide any documentary evidence to the court. She conceded that Hicks did not sign any document pertaining to terms of the withdrawal or reimbursement.

The characterization of property as marital or separate is largely a legal conclusion, but it is based on facts.[40] In ultimately characterizing the money as a marital liability, the court found that "[w]hile Mr. Hicks says the $88,500 amount really does not involve a debt owed by Ms. Pleasants to her trust, the *Syndoulos* 'rule' is controlling . . . and so that is regarded as a debt." In applying *Syndoulos*, the court afforded Pleasants's testimony on the issue greater weight than it may otherwise have deserved.

### (2) The Mat–Maid business debt

The court's order also characterized a $150,000 debt arising out of a failed "Mat–Maid" investment by Pleasants's business as a marital liability. The court found that Pleasants was a twenty percent partner in the business Heritage Properties, LLC, that Pleasants owed $150,000 for her share of a business note, and that Hicks co-signed on the note "because he was her spouse . . .

---

**36.** *See Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). *See also Inman v. Inman*, 67 P.3d 655, 659 (Alaska 2003); *Faulkner v. Goldfuss*, 46 P.3d 993, 996 (Alaska 2002); *Root v. Root*, 851 P.2d 67, 68 (Alaska 1993); *Carlson v. Carlson*, 722 P.2d 222, 223–24 (Alaska 1986).

**37.** *Faulkner*, 46 P.3d at 996.

**38.** "If the [equitable distribution issue] does go to trial, the parties are entitled to a full hearing at which they can present their case to the judge. Even if one party defaults, the court must still grant a hearing and base the decision on the evidence presented." BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 3:15, at 171 (3d ed. 2005).

**39.** While the order makes clear that the court invoked *Syndoulos* with regard to the five specific issues discussed below, the ruling also indicates that other disputed credibility determinations were also resolved in Pleasants's favor on that basis: "[C]onsideration of the facts and law has been based on the *Syndoulos* "rule" . . . therefore, except in the particular instances noted below, while Mr. Hicks may have disputed various parts of Ms. Pleasants' testimony, her testimony has been given the greater weight."

**40.** *See Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004).

[o]therwise, his doing so does not reflect any ownership, management or other interest in the business." The court further found that Hicks would not receive any income from the business. In reaching his conclusions on this issue, Master Brown found that *Syndoulos* ... "applied as to including Ms. Pleasants' $150,000 Mat–Maid debt in the overall mix, because Mr. Hicks was a signatory on the note, and thus his liability cannot be ignored."

Similar to the findings with respect to the trust withdrawal, the court invoked *Syndoulos* in making determinations regarding the Mat–Maid debt. There are no independent findings as to the evidence presented or to either party's intent.[41] Additionally, it is unclear from the record why the court found that while Hicks maintained no interest in the business and would not derive any affirmative benefit from it, his signature on the underlying note was sufficient to characterize the note as a marital debt.[42]

### (3) The Anchorage condominium

Throughout the hearing Hicks objected to Pleasants's valuations of various household personal items and the value of an Anchorage condominium.

■■ Where a party identifies a significant marital asset but presents no evidence as to its value, the best practice is for the trial court to direct the parties, or the delinquent party having best access to the proof, to fill the evidentiary void.[43] "[It] is the duty of the parties, not the court, to ensure that all necessary evidence is before the court in divorce proceedings."[44] The parties presented little documentary evidence of the condominium's value at the hearing, and the evidence was limited primarily to their testimony.

In his original property distribution spreadsheet filed in court, Hicks listed the value of the Anchorage condominium at $215,300. Pleasants testified that the value of the condominium was $250,000 and listed that amount on her property spreadsheet. She conceded the tax assessment of the home listed the property at $215,300. In determining the value of the condominium the court found that "[i]n light of their conflicting testimony and the *Syndoulos* 'rule' Ms. Pleasants' testimony is regarded as convincing that the condo ... has a present value of about $250,000."

■ It is plainly within the trial court's province to make factual determinations based on witness credibility.[45] By relying on *Syndoulos*, however, the court afforded Pleasants's testimony on the issue greater weight than it may otherwise have deserved.

### (4) Distribution and valuation of the parties' personal property

The court found that Pleasants's valuations of various items of personal property would be used "taking into account the *Syndoulos* 'rule' and in light [of] Mr. Hicks not proving that [Pleasants's valuations] are high or unreasonably high."[46] The court's final order applied *Syndoulos* in valuing and awarding various items of personal property to Pleasants upon her request. The record does not reflect whether the court independently weighed the evidence or evaluated the credibility of either party in its findings on these issues.

### (5) Award of the post office box to Pleasants

The parties had shared the use of a post office box in Anchorage. The court awarded

---

**41.** See *Nicholson v. Wolfe*, 974 P.2d 417, 423 (Alaska 1999) (parties may by their actions demonstrate intent to treat separate property as marital).

**42.** While Pleasants "assumed" this debt in the ultimate property division, the court included it as part of the marital estate.

**43.** *Root v. Root*, 851 P.2d 67, 69 (Alaska 1993).

**44.** *Id.*

**45.** See *Berg v. Berg*, 983 P.2d 1244, 1248 (Alaska 1999).

**46.** The parties disputed the value of household items in both the Anchorage condominium and their Girdwood home. For example, Pleasants valued a freezer in the Anchorage condominium at $1,200, a cd collection at $3,000, and tools at $1,000. Hicks valued the freezer at $500, the cd's at $1,500, and the tools at $400.

Pleasants the P.O. box "because she wants it and in light of the *Syndoulos* 'rule' that is not unreasonable."

In light of the foregoing, it is evident that the court's application of *Syndoulos* precluded a complete and independent consideration of the evidence in characterizing, valuing, and distributing the property of the parties on at least five matters.

## C. Hicks Was Not Denied Due Process.

■ Hicks asserts that he was denied due process of law because he did not have notice of the amounts claimed from the pleadings and he was not given an opportunity to have his testimony considered at the hearing. To the extent that Hicks's argument is that the judgment was outside the prayer for relief, we rejected this argument above and hold that the language in the prayer for relief served to place Hicks on notice that the court would consider all property and debts of the parties. Moreover, the record does not support Hicks's claim that he was not afforded the right to participate in the hearing. Hicks was notified of and attended the originally scheduled June hearing. Master Brown informed Hicks of his right to counsel and postponed the hearing over six weeks in order to allow the parties time to prepare and gather evidence. Master Brown informed the parties they should be prepared to discuss "real issues, property, debts, any retirement to be divided...." Hicks testified. Hicks cross-examined Pleasants. Master Brown questioned Hicks with respect to nearly every item listed on Hicks's property spreadsheet. Master Brown afforded Hicks the opportunity to introduce exhibits, make closing remarks, and to raise any additional issues.

Thus, because the complaint placed Hicks on notice of the property adjudication, and because he was afforded the opportunity to collect and introduce evidence, testify, and cross-examine Pleasants, Hicks's argument on this point is without merit.

## V. CONCLUSION

Because the language in the prayer for relief was sufficient to put Hicks on notice that the court would consider all assets and debts of the parties in adjudicating the property rights of the parties, the court properly exercised jurisdiction in dividing the marital estate. However because the court's application of *Syndoulos* was incorrect as a matter of law, and because the record lacks independent findings that might otherwise support the court's conclusions, we VACATE the property division order and REMAND to the trial court for further proceedings consistent with this opinion.[47]

---

47. We remand for new findings under the proper standard as set forth above and recognize that the court may be required to direct both parties to provide supplemental evidence. The court may also require a re-hearing of all or a select number of the issues. However, we leave to the trial court the discretion to determine the extent of further proceedings and additional evidence that may be needed.