WINFREE, Justice,
dissenting.
I respectfully disagree with the court's decision to remand this case to the superior court for further proceedings on whether Richard Wagner voluntarily failed to appear at trial. In my view: (1) the superior court's finding that Richard's absence from trial was voluntary is not clearly erroneous; (2) Richard has made no showing he was prejudiced by not participating in the trial; and, therefore, (8) the superior court's decision to conduct trial without Richard was not an abuse of discretion. I would recognize Felicia Wagner's right to an orderly, prompt, and effective disposition of this litigation and affirm the superior court's entry of divorce and its property division.
Background
Felicia and Richard married in 1998 and separated in 2009. Felicia filed for divorce in February 2010. In her complaint Felicia stated that she and Richard had "already divided all marital property and debt so there [was] none to be divided by [the] court." But in his answer Richard disagreed, stating that vehicles needed to be divided. Felicia and Richard appeared pro se.
A trial date setting conference was held in June 2010. Felicia appeared; Richard did not. Richard had telephoned the judge's assistant earlier that day and requested the hearing date be changed. The superior court stated on the record:
Mr. Wagner is not present. As I understand it, Mr. Wagner called my judicial assistant several times today wanting to change this hearing. And I can tell you, ma'am, that our response is that he needs to get a stipulation from you to waive it or file a motion. He chose not to do either. So I don't expect him to be here, and I'm not moving this hearing without written consent of the parties.
Trial was set for November.
A pretrial conference was held in November. Felicia appeared; Richard did not. Richard again had telephoned the judge's assistant earlier that day and said he had not been aware of the conference, he could not attend, and both he and Felicia wanted to set off the trial. The superior court stated on the record:
I'm taking the position that Mr. Wagner's [absence] here today has not been excused. The fact that he calls and leaves a message with my judicial assistants is not an order from the Court ... exeusing him from the pretrial conference. That's-there's some procedures and some formalities that need to be done, and that's why we're here today. I didn't cancel this hearing based on what he said.
And if you're willing to continue this, I can set a new trial date.
With Felicia's consent, trial was rescheduled for March 2011.
In February Felicia filed a financial declaration identifying her student loans as "property subject to disposition by the court." Another pretrial scheduling conference was held in March. Felicia appeared; Richard did not. Felicia indicated that the parties disputed the distribution of two vehicles and "a few debts." The superior court stated: "[Hle got notice of this hearing, and he's not here. So I guess we'll set the date without *177 Trial was rescheduled for the his input." week of May 80.
Both parties appeared for a pretrial conference on May 24. The parties identified their dispute as being over two cars in Richard's name and Felicia's student loans. The superior court judge handling the conference reminded them that trial before the assigned superior court judge was scheduled for the week of May 80. After Felicia requested to know the specific trial date so she could arrange her work schedule, the parties apparently were informed that trial was set for June 2.
Felicia appeared for trial; Richard did not. The superior court stated on the record:
I understand the history of this case, is that Mr. Wagner has had sporadic participation in it from the-its inception ... my review of the file indicates that he didn't file an answer in a timely fashion, that Ms. Wagner had to move for an entry of default before he filed an answer.
On June 22nd ... of 2010, a year ago, there was a trial date scheduling conference. Mr. Wagner failed to appear for that. Ms. Wagner did appear. Trial was set for the week of November 8th. The parties were referred to the child custody investigator. Ms. Wagner did that. Mr. Wagner was remiss in contacting the child custody investigator.
On November 2nd, 2010, ... Mr. Wagner had made afn}] unauthorized telephone call to my judicial assistant indicating that he couldn't be present at the trial. And ... at the pretrial conference, Ms. Wagner again was present. Mr. Wagner was not present, didn't file a motion. Didn't file a stipulation, didn't do anything. But Ms. Wagner agreed to continue the trial until March of this year.
On March ist we're here for a hearing. Again, ... Mr. Wagner failed to appear. And at that time, ... this present trial date was set. Another pretrial order was sent out.
I know Mr. Wagner received a copy of it because on May 24th there was a pretrial conference, and Mr. Wagner did appear. That was in front of Judge Downes. The parties were told to make a list of assets and debts from the marriage and a proposed division.
So Mr. Wagner knows about this. And apparently, again, he called, yesterday, my judicial assistant and indicated he's not going to be available. He was called out to fight a fire and he's going to be gone for two weeks and doesn't have cell phone contact.
Apparently, he's told you the same thing, Ms. Wagner; is that right?
MS. WAGNER: Yes.
THE COURT: Well, I can't conclude anything other than his absence today is voluntary. He had knowledge of what was going on. He had notice of what was going on regarding the trial. He was at the pretrial conference two weeks ago and knew that this was going on. And I can take his absence only being that he chose not to be here today. And I'm prepared to go forward if you are.
MS. WAGNER: Yes.
The court questioned Felicia regarding the parties' property and debts. The court found that Felicia incurred "substantial student loans" during the parties' marriage. It also determined that the loans were marital debt because they "were used for marital living expenses as well as education and were treated as marital debt to the extent payment was made on the loans." The court awarded one vehicle to each party and made each responsible for one-half of the student loans. A few days later the court entered findings of fact and conclusions of law and a decree of divorce.
Richard moved for reconsideration, stating, without affidavits or supporting doeu-mentation, that he had been unable "to file the necessary paperwork" for a continuance or to appear for trial because of his work schedule; that he knew the decision to continue the trial "would be up to the judge" but he had assumed the court would grant a continuance; and that he had made arrangements to get time off from work for future trial dates later in the summer. The motion was denied.
*178 Richard appeals, arguing two points: first, that the superior court erred by holding trial without him, and second, that the superior court erred by considering Felicia's student loans at trial.
Discussion
A. The Court's Finding Of Voluntary Failure To Appear For Trial
Richard argues that just before the June 2, 2011 trial he was employed as a bus driver and "was ordered by his employer to work" nearby wildfires. Richard contends he was unable to attend the trial because he could not find a substitute worker. The day before trial Richard telephoned Felicia and the judge's assistant to inform them that he would be unable to attend trial. According to Richard's reconsideration request, he asked the judge's assistant if trial could be rescheduled even though he had been unable "to file the necessary paperwork." Richard's own description of his statements reflects that from earlier telephone calls to the judge's assistant he knew exactly what was needed to seek a trial continuance. This corroborates the superior court's June 2010 statement on the record, after Richard called several times seeking a hearing date change, that the judge's assistant had informed Richard of the proper procedures: "And I can tell you, ma'am, that our response is that he needs to get a stipulation from you ... or file a motion." (Emphasis added.) I therefore disagree with the court's conclusion today that nothing in the record demonstrates that Richard was aware of the proper procedures for requesting a continuance.[1]
Alaska Civil Rule 40(e) provides that a request for continuance "must be supported by the affidavit of the applicant setting forth all reasons for the continuance." This implicitly includes a requirement that the application be made in writing and filed with the court. The superior court noted that Richard "was aware from earlier contacts with [the] court's judicial assistant that he needed to file a motion or stipulation in order to change court dates. He did neither." Richard's reconsideration motion reveals Richard's knowledge of this requirement and attempts to excuse the requirement by stating he was employed as a bus driver for a company that "was mobilized to provide transport services for firefighters," but fails to explain why he did not file the necessary paperwork when he was first called to work by his employer. Richard's knowing failure to file a properly supported motion for a continuance is ample ground to conclude that no request for a continuance was before the superior court and that the superior court did not abuse its discretion in proceeding to trial without Richard.
But it appears that in light of Richard's pro se status, the superior court actually did consider Richard's telephone call as a nonconforming motion for a continuance; the superior court denied that request when it found Richard "voluntarily chose not to appear." The voluntariness finding was based on the following: (1) there had been three trial dates; (2) Richard had not appeared for any trial date; (8) Richard had not actively participated or cooperated in the case; and (4) Richard had appeared at the May 2011 pretrial conference and was "actually aware" of the trial date. In light of Richard's failure to provide the superior court any factual support that he was ordered or otherwise commandeered against his will to help fight forest fires and that he was somehow prevented by his employer from filing a motion for a continuance or appearing for trial, the superior court's finding that Richard voluntarily chose not to appear for trial is not clearly erroneous.
B. The Property Division
Richard argues the superior court legally erred in determining that he was responsible *179 for student loan debts not raised in Felicia’s initial complaint. He contends that there is “an absolute ban against the entry of any judgment by default which is different in kind from that prayed for, and a judgment entered in violation of this rule is clearly erroneous and invalid.” Richard’s contention is unpersuasive. First, the judgment entered here was after an actual trial, albeit one that Richard declined to attend, so the judgment is not a default judgment. Second, even if the judgment could be characterized as a default judgment, Richard had full notice of the disputes being adjudicated.
Rule 54(e) limits recovery in default judgments by providing that “[a] default judgment shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.” “[F]or a default judgment to comply with Rule 54(c), a complaint must ... give a defendant ‘adequate notice upon which to make an informed judgment on whether to default or actively defend.’ ”[2]
Richard’s argument that the superior court erred by providing relief different from that sought in Felicia’s complaint is belied by the rule’s purpose and his actual knowledge of the issues to be decided at trial. In her complaint, Felicia stated that there were no assets to be divided by the court. But Richard disagreed, stating in his answer that “[tjhere [was] property and debt to be divided” and requesting division of their vehicles. Then in her February 2011 financial declaration, Felicia identified her student loans as property subject to the court’s disposition. During the May pretrial scheduling conference, at which Richard appeared, the parties specifically identified Felicia's student loans as disputed debt. Because Richard had actual notice that Felicia sought equitable division of her student loan debt, the superior court’s rulings regarding the student loans did not violate Rule 54(e).
Richard relies on Oaks v. Grocers Wholesale, Inc.,[3] but that case is distinguishable. In that ease, Oaks gave Grocers a promissory note secured by property.[4] Oaks defaulted on the note.[5] Grocers sued, requesting foreclosure and sale of the mortgaged property to satisfy the outstanding debt.[6] Oaks did not answer the complaint or make an appearance, and a default money judgment was entered against Oaks.[7] On appeal, we held that the default money judgment was improper because Grocers’ prayer for relief did not include a request for a money judgment and therefore the available relief was limited to satisfying the outstanding debt through sale of the property.[8]
Here, Richard answered the complaint. He counterclaimed that there was marital property to be divided by the court. He was present at the pretrial conference when Felicia identified the student loans as disputed debt. In fact, the superior court expressly indicated in Richard’s presence that the student loan dispute would be adjudicated at trial. Because Richard had notice of the relief sought, and ultimately granted, Oaks is inapposite. Furthermore, “Alaska’s civil rules clearly contemplate that a party’s identification and itemizations of assets, liabilities, and their proposed values in a divorce proceeding might not be produced until trial nears.”[9] Under Rule 90.1, parties to a divorce proceeding involving property disputes may file a list of assets and debts at issue five days before trial. Richard’s argument that the superior court’s jurisdiction was limited to what Felicia disputed in her initial complaint would render Rule 90.1 meaningless.
*180 Richard does not challenge the superior court's actual determination that Felicia's student loans were marital debts subject to division. And debts incurred during a marriage are presumptively marital debts: "Absent any showing that the parties intended a debt to be separate, the trial court must presume that a debt incurred during the marriage is marital and should consider it when dividing the marital estate." [10] Felicia testified that the student loans were obtained during the course of the marriage the funds were partly used for rent and other family purposes, and loan payments were made from household funds.[11] Based on this testimony, the superior court found that "[the [student] loans were used for marital living expenses as well as education and were treated as marital debt to the extent payment was made on the loans." Accordingly, the court did not err in characterizing the student loans as marital property.
Richard also does not challenge the superi- or court's equal division of the student loan debt. Superior courts exercise broad discretion in the division of marital assets.[12] Alaska Statute 25.24.160(a)(4) provides factors for trial courts to consider in dividing property. "When dividing a marital estate, the trial court generally should begin with the presumption that an equal division of marital property is most equitable." [13] An unequal division is appropriate "when it is justified by relevant factors identified in the [trial] court's findings." [14] The superior court awarded each party a vehicle and divided the student loan debt equally between them. Because Richard has not identified any factors to justify deviation from the equal-division presumption, I cannot conclude that the superior court abused its discretion in dividing the property.
C. No Abuse Of Discretion In Holding Trial Without Richard
"Refusal to grant a continuance is an abuse of discretion when a party has been deprived of a substantial right or seriously prejudiced." [15] "The particular facts and ciream-stances of each case determine whether the denial of a continuance is so unreasonable or so prejudicial as to amount to an abuse of discretion." [16] "Because of the necessity for orderly, prompt and effective disposition of litigation and the loss and hardship to the parties," motions for continuance should be denied "unless there is some weighty reason to the contrary." [17]
Given (1) the finding that Richard voluntarily chose not to appear for trial, and (2) Richard's failure to make a legitimate argument that he was prejudiced by the trial in his absence, I conclude that the superior court did not abuse its discretion in refusing to grant Richard's implicit continuance request. Richard had known since March that trial had been rescheduled for the week of May 30. Richard does not dispute that he was informed of the specific trial date, and he clearly had time to arrange his work schedule. The court already had rescheduled two prior trial dates, giving the court reason to deny a third continuance in the interest of orderly, prompt, and effective disposition of *181 this case. And Felicia, who had diligently shown up for every court appearance in the proceedings, had an important interest in finalizing the divoree and property division.[18] Finally, Richard has articulated no legitimate dispute about the court's actual equal division of vehicles and student loan debt. Because Richard failed to identify a sufficiently "weighty reason to the contrary," the refusal to continue the trial was not an abuse of discretion.
Conclusion
I would affirm the superior court's decision.

. Richard has not argued on appeal that the superior court somehow failed in its duty to inform him, as a pro se litigant, how to correct procedural defects in what he was trying to accomplish. Cf. Breck v. Ulmer, 745 P.2d 66, 75 (Alaska 1987). The court today raises and responds to this issue on its own, apparently adding another rule for dealing with pro se litigants-implicit in today's decision is a rule that a trial court must issue written orders explaining substantive rulings and procedural requirements to pro se litigants who decline both to attend a scheduled court hearing and to make an effort to determine what occurred at the hearing.

. Hicks v. Pleasants, 158 P.3d 817, 821 (Alaska 2007) (quoting 46 Am. Jur 2d Judgments § 29 (1964)); see also 10 Charles Alan Wright et al. Federal Practice and Procedure § 2663 (3d ed. 2004) (“It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, [if defendant does not appear], allow the court to give a different type of relief or a larger damage award.”).

. 377 P.2d 1001 (Alaska 1963).

. Id. at 1002.

. Id.

. Id.

. Id.

. Id.

. Hicks v. Pleasants, 158 P.3d 817, 822 (Alaska 2007).

. Veselsky v. Veselsky, 113 P.3d 629, 636 (Alaska 2005) (quoting Coffland v. Coffland, 4 P.3d 317, 321-22 (Alaska 2000)).

. At the May 24, 2011 pretrial conference Richard made statements on the record that can only be seen as concessions that the student loans were obtained during the marriage and that some of the funds were used for marital purposes.

. Veselsky, 113 P.3d at 632 (citing Cox v. Cox, 882 P.2d 909, 913 (Alaska 1994)).

. Heustess v. Kelley-Heustess, 158 P.3d 827, 833 (Alaska 2007) (quoting Fortson v. Fortson, 131 P.3d 451, 456 (Alaska 2006)) (internal quotation marks omitted).

. See Azimi v. Johns, 254 P.3d 1054, 1061 (Alaska 2011) ("We are mindful that it is difficult for lay persons to represent themselves in court, but the superior court was correct to consider that Johns was also entitled to his day in court and

. McDougall v. Lumpkin, 11 P.3d 990, 993 (Alaska 2000) (citing Hayes v. Hayes, 756 P.2d 298, 300 (Alaska 1988)).

. Shooshanian v. Dire, 237 P.3d 618, 623 (Alaska 2010) (quoting Siggelkow v. Siggelkow, 643 P.2d 985, 986-87 (Alaska 1982)) (internal quotation marks omitted).

. Siggelkow, 643 P.2d at 987 (citing Wright v. State, 501 P.2d 1360, 1366 (Alaska 1972); Kalmus v. Kalmus, 103 Cal.App.2d 405, 230 P.2d 57, 64 (1951)).

. Shooshanian, 237 P.3d at 623 (quoting Siggelkow, 643 P.2d at 987) (internal quotation and editing marks omitted). *181 that the case had already been stayed for six months at Azimi's request.").