NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ALENA POLEN, ) | |
| ) | Supreme Court No. S-18398 |
| Appellant, ) | |
| ) | Superior Court No. 3AN-21-04059 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| JACOB MILLER, ) | AND JUDGMENT* |
| ) | |
| Appellee. ) | No. 2029 – May 8, 2024 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, William F. Morse, Judge.

Appearances: Alena Polen, pro se, Anchorage, Appellant. Christopher Smith, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

I.      INTRODUCTION

After a mother and father's lengthy child custody litigation, both parties sought attorney's fees. After an evidentiary hearing the superior court awarded the father attorney's fees related to three motions. The award consisted of 50% of the father's fees related to two of the motions, based on the parties' unequal financial status, and the father's full fees related to the third motion, based on the court's finding that

---

\*      Entered under Alaska Appellate Rule 214.

the mother filed the motion in bad faith. The mother appeals, asserting an array of errors. Observing no error or abuse of discretion, we affirm.

## II. FACTS AND PROCEEDINGS

Alena Polen and Jacob Miller's custody litigation has been protracted. We focus here only on the facts and proceedings relevant to this attorney's fees appeal.

Polen and Miller are both parents of one child. The parties lived together with their child until May 2020. After separating, Polen and Miller made an agreement to equally share physical custody of the child, but never effectively enacted the plan and disagreed as to why. In the ensuing custody dispute, Polen was represented by two different attorneys before representing herself. Miller has been represented by counsel throughout.

The parties engaged in extensive litigation that resulted in a final custody order in August 2021.[1] They initially reached an agreement on interim custody (which the court accepted and incorporated into an interim order), but Polen later moved to withdraw from the agreement, leading to litigation.[2] Following that litigation, the court issued a final custody order, and both parties moved for reconsideration. Polen's motion for reconsideration focused on her assertion that Miller had committed acts of domestic violence, her disagreement with the superior court's contrary findings, and her related argument that the rebuttable presumption triggered by findings of domestic violence prevented Miller from having custody or unsupervised visitation with their child.[3] Miller's motion requested the court reconsider its findings related to claimed acts of domestic violence and custodial interference by Polen. The court denied both

---

[1] *See Polen v. Miller*, No. S-18218, 2023 WL 1812732, at *1-5 (Alaska Feb. 8, 2023).

[2] *See id.* at *2-3.

[3] *See* AS 25.24.150(g) (creating rebuttable presumption that parent with history of domestic violence may not be awarded sole or joint legal or physical custody).

parties' motions for reconsideration, noting that after three days of hearings, it had determined that Miller committed only one act of domestic violence, which did not trigger the rebuttable presumption against custody.[4] The court issued an amended final custody order in September 2021, clarifying some conditions related to Miller's completion of a domestic violence program and alcohol testing.

In October 2021, Polen, then unrepresented, moved to modify the court's custody order, raising the same allegations of domestic violence and the rebuttable presumption against custody. She contended that her motion was based on "unheard and unlitigated claims of domestic violence committed by Jacob Miller."[5] Miller opposed, noting that Polen failed to make the required showing of a "substantial change in circumstances" because her assertions all involved events litigated in the hearings leading to the court's August and September final custody orders. The superior court denied Polen's motion on that basis. During the same time period Polen filed a motion to stay enforcement of the court's final custody order pending appeal and the court's ruling on her custody modification motion. The court denied this motion as well.

A.    **Attorney's Fees Litigation And The Superior Court's First Attorney's Fees Order**

Miller sought attorney's fees associated with having to respond to Polen's motion to modify custody. Although Miller did not initially expressly argue that Polen's motion was vexatious or made in bad faith, he raised a series of facts that could tend to support such an argument. Polen opposed his request. In addition, she brought her own motion for attorney's fees for the entire custody dispute.

---

[4]    *See* AS 25.24.150(h) (defining "history of perpetrating domestic violence" as either one incident of domestic violence that caused serious physical injury, or more than one incident of domestic violence).

[5]    At that point Polen had previously made numerous filings requesting that the court apply the rebuttable presumption based on nearly identical facts and law.

In December 2021, the superior court issued an initial order related to the attorney's fees motions. The court explained the legal standard for awarding attorney's fees, quoting the two governing statutes,[6] and described the two-step analysis required under *Kowalski v. Kowalski*[7] for a court to award increased attorney's fees due to bad faith or vexatious conduct. The court notified the parties that it would apply these tests to each party's request for attorney's fees by evaluating the parties' relative financial status and determining whether any litigation conduct warranted awarding attorney's fees under the *Kowalski* standard. The court observed that it had information on file regarding Miller's income due to prior child support-related filings, but that it did not have sufficient information to establish Polen's income or financial situation. The court required that each party provide documentation of relevant attorney's fees, and that Polen provide documentation of her income to the court and to Miller. The court further scheduled an evidentiary hearing.

## B. The Evidentiary Hearing

The court held the evidentiary hearing related to attorney's fees in February 2022. Both parties submitted billing records and income information before the hearing. During the hearing Miller clarified that he was seeking fees incurred related to his opposition to Polen's custody modification motion, as well as fees corresponding with two additional motions brought by Polen related to the underlying custody order: the motion to stay enforcement of the custody order pending appeal, which the court denied, and the motion to withdraw and void the custody agreement that informed the court's interim custody order, which she withdrew. Miller argued that both of these additional motions had been filed in bad faith.

---

[6] AS 25.20.115 (governing attorney's fee awards related to motions to modify custody); AS 25.24.140(a)(1) (governing attorney's fee awards incurred during original child custody and visitation proceedings).

[7] 806 P.2d 1368 (Alaska 1991).

During the hearing the court heard detailed updates on Miller's employment, income, work schedule, and expenses. The court also questioned Miller regarding his wife's income, establishing that his wife had recently begun working in real estate and, in Miller's estimation, had earned around $15,000 in 2021.

Polen, meanwhile, contended that Miller was underrepresenting his income to the court and that each of the motions Miller complained of had merit. Polen argued that the court should consider Miller's wife's income. She also noted the discrepancy between Miller's high attorney's fees bills and his relatively low reported assets, income and other expenses, suggesting he could afford his attorney's fees. The court took the matter under advisement.

## C.    The Second Attorney's Fees Order

After the hearing, the court awarded Miller attorney's fees related to the motions he had identified. The court reiterated the governing legal standards. It then identified the parties' respective financial positions, finding that Miller's employment was relatively unstable and that the pandemic had slowed his work in the ironworking industry, while Polen's tax returns and income-related filings indicated that she earned more annually than Miller. The court further observed that Miller's monthly expenses were greater than his income, and that he "made up the difference by pulling [money] out of his retirement funds."[8]

The court then proceeded to a two-step analysis. Under the first step, the court concluded that Polen was "in better financial shape" and that because of "[h]er relative financial advantage" she should reimburse half the fees Miller sought for the three identified motions. Under the second step, the court turned to the evidence of bad-faith or vexatious conduct. It found that Polen's custody modification motion was

---

[8]    The court noted Miller's testimony that in spite of his relatively low income, he had incurred over $87,000 in attorney's fees during the course of the custody litigation. The court questioned Miller's decision to incur such extensive fees, and commented that this could suggest Miller had access to resources he was not reporting.

made in bad faith because it was "frivolous and made out of dissatisfaction with the Court's earlier ruling on custody." The court reasoned that her motion simply reasserted the same arguments she had raised repeatedly throughout prior custody litigation. Given its finding of bad faith, the court required Polen to reimburse Miller for all fees incurred in relation to the custody modification motion alone. The court did not modify its order that Polen pay 50% of Miller's fees on the other two motions.

Polen appeals.[9]

## III. STANDARD OF REVIEW

"We use our independent judgment to determine whether the superior court applied the law correctly in awarding fees."[10] We review an award of attorney's fees related to initial custody determinations and modifications for an abuse of discretion,[11] and we examine the court's underlying factual findings for clear error.[12] "Clear error exists 'when a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake.'"[13] Where the court has "properly applie[d] the statute[s]" governing attorney's fees, and its findings are supported by the record, its award of attorney's fees is not an abuse of its discretion.[14]

---

[9]     While Polen references her request for attorney's fees in her appeal, she only appeals the superior court's fee award to Miller.

[10]     *Collier v. Harris* (*Collier I*), 261 P.3d 397, 403 (Alaska 2011).

[11]     *Id.* at 402-03; *Rodvik v. Rodvik*, 151 P.3d 338, 351 (Alaska 2006).

[12]     *Collier v. Harris* (*Collier II*), 377 P.3d 15, 20 (Alaska 2016).

[13]     *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (alteration in original) (quoting *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018)).

[14]     *Collier II*, 377 P.3d at 25.

## IV. DISCUSSION

We begin by outlining the two statutory standards for determining attorney's fees relevant to the instant appeal: one for determining attorney's fees in the context of initial custody and child support determinations under AS 25.24.140(a)(1)[15] and another for determining attorney's fees associated with proceedings to modify custody or visitation under AS 25.20.115.[16]

Applying these two standards requires different processes. In *Kowalski v. Kowalski*, we held that when the superior court awards attorney's fees related to an initial child custody or support determination, it must address two steps in order: first, the court must determine the appropriate fee award based on the relative financial status of the parties, and second, it may modify the award based on a party's misconduct.[17] Put another way, in order for a trial court to increase an attorney's fees award in this context beyond that supported by the financial status of the parties, the court must find that a party acted in bad faith or engaged in vexatious conduct.[18]

In contrast, when a party requests a fee award in connection with a motion to modify custody or visitation under AS 25.20.115, "the parties' relative financial

---

[15] *See Collier I*, 261 P.3d at 409 (citing *Bergstrom v. Lindback*, 779 P.2d 1235, 1238 (Alaska 1989)). We have held that AS 25.24.140(a)(1) applies to initial custody and child support determinations of unmarried parents seeking child custody and support orders. *Koller v. Reft*, 71 P.3d 800, 808 (Alaska 2003). "We have also determined that the divorce exception seems applicable when there is a 'short period of time between the breakup of the parties' relationship and the filing of the action [on] . . . property division, child custody, and child support issues . . . .'" *Id.* at 809 (alterations in original) (quoting *Bishop v. Clark*, 54 P.3d 804, 813-14 (Alaska 2002), *abrogated on other grounds by Tomal v. Anderson*, 426 P.3d 915, 992 n.4 (Alaska 2018)).

[16] *See Rowen v. Rowen*, 963 P.2d 249, 257 (Alaska 1998).

[17] 806 P.2d 1368, 1372-73 (Alaska 1991).

[18] *See id.* at 1373.

resources do not necessarily take primacy over the presence or absence of good faith."[19] Under AS 25.20.115 the court must consider both factors, but it need not follow the two-step process described in *Kowalski*, nor give primacy to relative financial resources.[20] Failure to make express findings related to both considerations is reversible error.[21] But in awarding attorney's fees under AS 25.20.115, neither consideration takes precedence over the other because the court is required only to *consider* and make findings for applicable considerations.[22]

We understand that Polen's primary assertions on appeal pertain to the superior court's award of enhanced attorney's fees. She contends that the superior court both incorrectly applied the standards for awarding enhanced attorney's fees and lacked sufficient evidence to support the finding that she acted in bad faith. Polen's other overlapping arguments can be understood as follows: first, that the court abused its discretion because it failed to consider the parties' relative financial status and lacked sufficient evidence to determine their relative financial positions; and second, that the court failed to provide her a fair hearing and to hear her arguments.

We disagree, and address each of Polen's arguments below.

### A. The Superior Court Identified And Applied The Appropriate Standards For Analyzing Attorney's Fees.

The superior court properly applied the *Kowalski* standard to award attorney's fees related to Polen's motions to stay the original custody order and to void the custody agreement. Both motions related back to the original custody order and were subject to the two-step standard incorporated into AS 25.24.140(a)(1).[23] The court

---

[19]  *S.L. v. J.H.*, 883 P.2d 984, 985-86 (Alaska 1994).

[20]  *Collier I*, 261 P.3d at 410 (citing *S.L.*, 883 P.2d at 985).

[21]  *See id.*

[22]  *See Collier II*, 377 P.3d 15, 25 (Alaska 2016); *Kowalski*, 806 P.2d at 1373.

[23]  *See Kowalski*, 806 P.2d at 1373.

correctly applied the standard's first step when it expressly analyzed the parties' respective financial positions in determining that Polen should pay Miller 50% of his attorney's fees incurred related to the two motions. The court did not invoke the second step by awarding enhanced fees based on bad faith of either party. Its fee awards comport with AS 25.24.140.

Even though the *Kowalski* attorney's fee standard only applies to initial child custody determinations, the court also applied it to Polen's custody modification motion. It applied the first step by analyzing the parties' respective financial conditions and determining that Polen should, on that basis, pay 50% of Miller's attorney's fees related to this motion as well. And then it applied the second step, awarding full attorney's fees after finding that Polen engaged in bad faith. The court was not required to follow *Kowalski's* two-step method,[24] but in doing so it necessarily satisfied the requirements of AS 25.20.115.[25]

And despite Polen's claim to the contrary, the court aptly explained that her continued assertion of arguments already repeatedly raised and litigated, with "almost no evidence of the change in circumstances that a motion to modify custody requires," amounted to bad faith.[26] The record in this case confirms Polen's continued attempts to relitigate issues heard and decided by the court. The court therefore did not clearly err in concluding that Polen exercised bad faith in filing her motion to modify custody.

---

[24]    *Cf. id.*

[25]    *See Collier II*, 377 P.3d at 25.

[26]    We have previously rejected "mere redundancy" as a basis for attorney's fees awards only in limited circumstances where we determined that motions that the superior court and parties incorrectly deemed "redundant" actually "clarified the potential merit" in the earlier request. *See Johnson v. Johnson*, 239 P.3d 393, 403-04 (Alaska 2010). No such circumstances exist here.

## B. Polen's Remaining Arguments Are Unsupported By The Record.

Polen also contends that the superior court both lacked sufficient information to analyze the parties' relative financial positions and incorrectly determined those respective financial positions, and that the court denied her a fair hearing regarding the contested issues relevant to attorney's fees. These remaining arguments, however, are unsupported by the record.

### 1. The superior court's findings regarding the parties' relative financial positions were not clearly erroneous.

Polen's claims that the court failed to consider the relative financial status of the parties and lacked sufficient evidence to make such a determination are contradicted by the record. The court made factual findings related to the earnings of both parties, and those findings are supported by the evidence and testimony regarding each party's respective income, expenses, and overall financial position. Polen seizes upon one statement by the court that Miller's high attorney's fees might indicate his assets are "not reflected in income and earnings data" — a possibility that the court clearly considered. She also points to the fact that Miller and his wife bought a house after the custody proceedings ended as indicative that Miller must have underreported his income. The court considered the arguments raised by Polen, however, and ultimately found that the testimony and documentary evidence showed overall that Polen was in a better financial position than Miller. Where, as here, the court's findings are supported by evidence in the record, it is not our role to reweigh the evidence.[27]

Polen relatedly contends that the court failed to consider whether Miller benefitted from additional sources of income, but the record confirms that the court did

---

[27] "[W]e will not re-weigh evidence when the record provides clear support for the trial court's ruling; it is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence." *In re Adoption of Hannah L.*, 390 P.3d 1153, 1156 (Alaska 2017) (quoting *In re Adoption of S.K.L.H.*, 204 P.3d 320, 325 (Alaska 2009)).

consider additional income sources. Indeed, when Polen raised the issue during the parties' evidentiary hearing, the court questioned Miller and elicited testimony about his wife's current job and estimated current and future income. The court considered this evidence in finding that Miller nevertheless experienced monthly losses. We further note that, depending upon the circumstances, evidence Miller was relying on third parties could arguably tend to demonstrate his relatively weaker financial position.[28] Overall the record demonstrates that the court considered and accounted for Polen's arguments in finding that Miller's financial position was weaker than hers.

Polen also relies on the court's statement in its first attorney's fees order that "it [did] not have adequate information about Polen's income or financial situation" to conduct the attorney's fees analysis. But Polen fails to acknowledge that the court made this statement within its order that she provide additional necessary information, and that she subsequently provided that information to the court so that it could conduct the required analysis. She further disagrees with the court's finding she did not experience monthly losses, but she fails to identify any evidence in the record contradicting the court's finding.[29]

### 2. Polen received a fair hearing and was afforded the opportunity to respond to Miller's requested attorney's fees.

Finally, Polen's procedural claims, that she did not receive a fair hearing and that the court overlooked her arguments, are also contradicted by the record. The court considered and addressed her requests for attorney's fees and the evidence she presented. Contrary to Polen's assertions, the court clearly explained prior to the

---

[28] *See Sarah D. v. John D.*, 352 P.3d 419, 426 (Alaska 2015). In *Sarah D.* we concluded that outside financial support for litigation expenses could alter a party's financial position but did not impact the determination of whether that litigant had the ability to pay. *Id.*

[29] *See Hicks v. Pleasants*, 158 P.3d 817, 826 (Alaska 2007) (concluding "the best practice is for the trial court to direct the parties, or the delinquent party having best access to the proof, to fill the evidentiary void").

evidentiary hearing what information and evidence it would need to consider in determining the parties' respective attorney's fees motions. The court also outlined and applied the governing legal standards in light of the evidence and the parties' requests.

The record further undercuts Polen's claim that Miller's expansion of the scope of attorney's fees he was seeking, and provision of updated financial information shortly before the evidentiary hearing, violated her right to procedural due process. Polen neither requested a continuance nor otherwise objected to moving forward and having the court consider Miller's request for attorney's fees related to three motions rather than one. Further, Polen offered no objection to the court's admission and consideration of exhibits recently disclosed by Miller. On the contrary, Polen demonstrated that she was prepared to address Miller's recently disclosed materials and the clarified scope of his attorney's fees request during the course of the hearing. We reject her arguments accordingly.

## V.    CONCLUSION

We AFFIRM the superior court's attorney's fees award.